

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

**NO. 2-07-430-CR**

RODNEY DICK HELM, JR.                                                 APPELLANT

V.

THE STATE OF TEXAS                                                         STATE

------------

FROM COUNTY CRIMINAL COURT NO. 7 OF TARRANT COUNTY

------------

## OPINION

------------

Rodney Dick Helm, Jr. appeals from his conviction for driving while intoxicated ("DWI"). In three points, he complains that the trial court erred by overruling his objection to a jury charge instruction, that the trial court abused its discretion by overruling his motion for new trial complaining of that jury instruction, and that the improper jury instruction harmed him. The State agrees that the trial court erred by giving the improper jury instruction but argues the error was harmless. We affirm.

**Facts**

While waiting at a stop sign, Officer Ismael Espinoza of the Fort Worth Police Department observed Appellant turn in front of another truck, which had to slam on its brakes to avoid a collision and skidded. Officer Espinoza considered the turn dangerous. Appellant drove past Officer Espinoza and into the parking lot of a striptease bar. Officer Espinoza then made a u-turn and followed Appellant into the lot. His overhead lights were not on. He parked behind Appellant and saw Appellant "moving something or placing something or possibly retrieving something" on his vehicle's floorboard. Appellant exited his truck and walked toward the bar's entrance, swaying and not acknowledging Officer Espinoza's presence.

Officer Espinoza exited his car, approached Appellant, and detected an odor of alcohol about his person. He placed Appellant in the back of his squad car, in the confined space of which the smell of alcohol on Appellant's breath was much stronger. Appellant admitted that he had been drinking; he said he had consumed "maybe two" drinks. Officer Espinoza found a 750-milliliter bottle of whiskey on the floor of Appellant's truck, and the bottle was 80% empty. Appellant's speech was "a little bit slurred."

Officer Espinoza was not trained to administer field sobriety tests, so he called for backup. Sergeant Weldon Norman responded to the call. Appellant

2

told him "right off the bat that he wasn't going to take any field sobriety tests" before Sergeant Norman had even spoken to him. Sergeant Norman then administered the HGN test, and Appellant exhibited four out of six clues of intoxication. Appellant's eyes were "a little bloodshot."

Officer Espinoza arrested Appellant for driving while intoxicated. He transported Appellant to the jail and gave him the DIC 24 warning. Appellant refused to provide a breath specimen.

Appellant points out that there were no police video cameras in either patrol vehicle; therefore, the only evidence of the events leading up to and including the arrest is the officers' testimony. Also, a video recording of Appellant and his actions at the city jail was admitted and published to the jury.

The trial court instructed the jury, over Appellant's objection, that "[y]ou are instructed that you may consider the defendant's breath test refusal as evidence in this case." The jury convicted Appellant, and the trial court sentenced him to ninety days' confinement in the Tarrant County Jail and a fine of $550, with the confinement portion of the sentence probated for twenty-four months.

### The trial court's instruction was error

In *Hess v. State*, this court held that it was error for a trial court to give an instruction identical to the one in this case. 224 S.W.3d 511, 515 (Tex.

App.—Fort Worth 2007, pet. ref'd). In *Bartlett v. State*, the Texas Court of

Criminal Appeals, citing our *Hess* opinion, recently explained,

> A judicial instruction that singles out a particular piece of evidence, but does not serve one of the legally authorized purposes set out above, risks impinging upon the "independence of the jury in its role as trier of the facts, a role long regarded by Texans as essential to the preservation of their liberties." Even a seemingly neutral instruction may constitute an impermissible comment on the weight of the evidence because such an instruction singles out that particular piece of evidence for special attention. In the instant case, the question is whether the trial court's seemingly neutral explanation of the law with respect to the admissibility of the refusal to take a breath test constituted such an impermissible comment.

270 S.W.3d 147, 151–52 (Tex. Crim. App. 2008) (citations omitted).

The *Bartlett* court explained that there are three situations when a trial

court may properly comment on a specific item of evidence:

> First, the trial court may specifically instruct the jury when the law directs it to attach a certain degree of weight, or only a particular or limited significance, to a specific category or item of evidence, [such as accomplice testimony under article 38.14 of the code of criminal procedure or evidence admitted for a limited purpose under rule 105 of the Texas Rules of Evidence]. Second, the Legislature has expressly required the trial court to call particular attention to specific evidence in the jury charge when the law specifically identifies it as a predicate fact from which a jury may presume the existence of an ultimate or elemental fact. . . . Under section 22.05(c) [of the Penal Code, the deadly-conduct statute], recklessness and danger, two separate elements of the offense of deadly conduct, may each be presumed if a person knowingly points a firearm at or in the direction of another. Third, the trial court may instruct the jury with respect to evidence that is admissible contingent upon certain predicate facts that it is up to

4

the jury to decide. For example, when the law specifically assigns to jurors the task of deciding whether certain evidence may be considered, as it does under Article 38.23 of the Code of Criminal Procedure, it is essential that jurors be told exactly what evidence is in question [before] they can[] pass upon its admissibility.

*Id.* at 151 (citations and quotation marks omitted).

These are the only three circumstances under which the law authorizes singling out particular evidence in the jury instruction. Instructing the jury about the refusal to take a breath test does not fall within any of these three exceptions. As the State candidly concedes, the trial court clearly erred in instructing the jury that it could consider Appellant's refusal to take a breath test. We sustain Appellant's first issue.

**The error was harmless**

Having determined that there was error in the charge, we now must decide if sufficient harm was caused by the error to require a reversal. *See Hutch v. State*, 922 S.W.2d 166, 170−71 (Tex. Crim. App.1996). The standard to determine whether sufficient harm resulted from the charging error to require reversal depends upon whether the Appellant objected. *See Olivas v. State*, 202 S.W.3d 137, 144 (Tex. Crim. App. 2006) (interpreting *Almanza v. State*, 686 S.W.2d 157 (Tex. Crim. App. 1985) (op. on reh'g)). When the Appellant has made a timely objection at trial, as Appellant has in this case, an appellate court will search only for "some harm." *Abdnor v. State*, 871 S.W.2d

726, 732 (Tex. Crim. App. 1994). In other words, a properly preserved error will require reversal as long as the error is not harmless. *Almanza*, 686 S.W.2d at 171. In making this determination, "the actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole." *Id.*; *see also Hutch,* 922 S.W.2d at 171; *Hess*, 224 S.W.3d at 516–17.

After reviewing the entire jury charge, the state of the evidence, and the arguments of counsel, we hold that the instruction in this case, albeit improper, was not harmful to Appellant. Absent the instruction in question, the charge is wholly unexceptional. It contains no other erroneous or questionable sections, and the application paragraph properly instructs the jury to find Appellant guilty if "you find from the evidence beyond a reasonable doubt that in Tarrant County, Texas, on or about the 18th day of September, 2006, the defendant, Rodney Dick Helm, Jr., did then and there operate a motor vehicle in a public place while . . . intoxicated." *See* Tex. Penal Code Ann. § 49.04 (Vernon 2003). The charge then states "[u]nless you do so find beyond a reasonable doubt or if you have a reasonable doubt thereof, you will acquit the defendant and say by your verdict, not guilty." The charge also properly

6

defined intoxication to mean "not having the normal use of one's mental or physical faculties by reason of the introduction of alcohol into the body." *See* Tex. Penal Code Ann. § 49.01(2)(A). Assuming, as we must, that the jury followed the instructions of the trial court, *Colburn v. State*, 966 S.W.2d 511, 520 (Tex. Crim. App. 1998), we cannot say that the erroneous instruction reduced the State's burden of proof in any way.

The weight of the probative evidence militates against harm, too. *See Almanza*, 686 S.W.2d at 171. Appellant turned in front of an oncoming vehicle, almost causing a wreck that was averted only because the other vehicle slammed on its brakes. His breath smelled of alcohol, his eyes were bloodshot, his speech was slurred, and he swayed when he walked. Officer Espinoza saw him place something on the floor of his vehicle, which the jury could have reasonably concluded was the mostly-empty whiskey bottle. Appellant exhibited four clues of intoxication on the HGN test, and he refused to take other field sobriety tests or submit a breath sample. Evidence favorable to Appellant's defense is the video made at the jail, in which he does not exhibit obvious signs of intoxication, though he does sway back and forth. While this is not a "slam-dunk, falling-down drunk" type of case, we cannot say, given the weight of the evidence as a whole, that the court's instruction harmed Appellant. *See Hess*, 224 S.W.3d at 516.

7

Additionally, once the trial court admitted testimony regarding Appellant's refusal to take the breath test, both parties were free to argue that fact to the jury. *See Wesbrook v. State*, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000), *cert. denied*, 532 U.S. 944 (2001); *Hess*, 224 S.W.3d at 516. Accordingly, the State argued, "Don't you think if he wasn't intoxicated, he would have [submitted to additional testing]?" Appellant's counsel pointed out that a suspect does not have to submit to a breath test, but conceded that the jury could consider the fact that he refused to submit. Therefore, the jury did not need any judicial instruction to focus its attention on the refused test. *See Brown v. State*, 122 S.W.3d 794, 803 (Tex. Crim. App. 2003); *Hess*, 224 S.W.3d at 517. Although the State referred to Appellant's refusal three times during its closing, the record demonstrates that the prosecution did not emphasize the court's instruction, focus the jury's attention on that instruction, or exploit the instruction by placing the weight of the trial court behind it. *See Hess*, 224 S.W.3d at 511. Accordingly, we hold that the instruction was harmless under the facts of this case, and we overrule Appellant's third issue. We also overrule his second issue, in which he argues that the trial court erred by failing to grant him a new trial based on the trial court's erroneous charge instruction.

8

**Conclusion**

Having concluded that the trial court erred by specifically instructing the jury that it could consider Appellant's refusal to a breath test but further concluding that the error was harmless under the evidence and circumstances of this case, we affirm the trial court's judgment.

ANNE GARDNER
JUSTICE

PANEL:  DAUPHINOT, GARDNER, and WALKER, JJ.

DAUPHINOT, J. filed a dissenting opinion.

PUBLISH

DELIVERED:  August 31, 2009

9



# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 2-07-430-CR

RODNEY DICK HELM, JR. APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM COUNTY CRIMINAL COURT NO. 7 OF TARRANT COUNTY

------------

## DISSENTING OPINION

------------

Because I believe that Appellant suffered some harm from the erroneous jury instruction, I dissent.

The majority accurately sets out the underlying facts of the case and conscientiously analyzes the applicable law as applied to those facts. I must disagree, however, with the majority's interpretation of those facts.

Under the *Almanza* analysis, "[i]f the error in the charge was the subject of a timely objection in the trial court, then reversal is required if the error is

'calculated to injure the rights of defendant,' which means no more than that there must be *some* harm to the accused from the error."[1] Because Appellant timely objected to the charge error, in determining whether some harm exists, this court must review the entire jury charge, the evidence, the jury argument, and "any other relevant information revealed by the record of the trial as a whole."[2]

Although it is true that Officer Espinoza said that Appellant made an unlawful turn, he also testified that when Appellant turned left, the other truck was a little "less than a block" away. If the approaching truck had to skid and cause its brakes to screech, it could only be because it was approaching at an excessive speed. Under ordinary circumstances, there is ample time to turn in front of a vehicle that is a little "less than a block" away.

Additionally, Officer Espinoza did not decide to pull Appellant over until he saw Appellant pull into the parking lot of a strip club. Even then, Officer Espinoza did not turn on his overhead lights, and, in fact, he did not do the things an officer normally does when giving a ticket, nor did he give Appellant a ticket. The officer instead placed Appellant in the cage in the back of his

---

[1] *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g).

[2] *Id.*; *see also Ovalle v. State*, 13 S.W.3d 774, 786 (Tex. Crim. App. 2000).

police unit. Although Officer Espinoza claimed that he saw Appellant sway as he walked, there was no sway evident in the video taken at the police station roughly an hour after the arrest. Although the officer said that he smelled alcohol about Appellant's person, it was not until he had placed Appellant in the unit that he was able to determine that the odor of alcohol was "a lot stronger."

Without advising Appellant of any of the required warnings, the officer began to question him. Leaving Appellant in the back seat of the unit, from which Appellant could not exit, the officer searched Appellant's truck, which was lawfully parked in the parking lot. It was only then that the officer decided that Appellant's speech was "a little bit slurred."

There was no indication that the officer was concerned for his safety. Rather, he was searching for evidence. As the *Gant* court pointed out, a person secured in the back seat of a police unit cannot reach any weapon in his own vehicle. An officer, therefore, is not justified in searching an empty vehicle on the basis of the officer's safety.[3] At no time was Appellant allowed to return to his truck.

Appellant was seized and put into the cage of the police unit, with doors that would not open from the inside, before the officer detected a strong odor of alcohol, before he learned that Appellant had had two drinks, and before he

---

[3] *Arizona v. Gant*, 129 S. Ct. 1710, 1716 (2009).

3

unlawfully searched Appellant's truck and found alcohol. There was no field sobriety test. Neither officer had a functioning video camera in his unit. The only evidence of Appellant's conduct at the scene of the arrest was the testimony of the police officers. Other than Officer Espinoza's testimony that Appellant turned improperly, there was no evidence of impaired driving.

After Officer Norman arrived, he performed an HGN test that showed some nystagmus, which Norman characterized as "clues of intoxication." Appellant's eyes were also "a little bloodshot." Appellant did not perform any other field sobriety tests.

Although there is no visual record of Appellant's demeanor at the scene of the arrest, there is a DVD of his demeanor in the police station. The DVD reveals that Appellant's speech was not slurred, he did not sway when he walked, he was steady on his feet, he was able to follow the written and oral warnings, and he repeatedly and clearly stated that he would not submit to any testing until his attorney arrived. He repeatedly requested that his attorney be present. Once a suspect has invoked his Fifth Amendment right to counsel, police interrogation must cease until counsel has been provided or the suspect himself reinitiates a dialogue.[4] Yet the officers did not stop their attempts to

---

[4] *Edwards v. Arizona,* 451 U.S. 477, 484–85, 101 S. Ct. 1880, 1884–85 (1981).

4

question Appellant and continued to ask him to perform field sobriety tests and to submit a breath sample. I know of no rule of law that excepts DWI offenses from the mandate of the Fifth Amendment to the Constitution of the United States and *Edwards v. Arizona.*[5]

The jury, then, was presented with the fruit of an unlawful search, the fruit of unlawful questioning, no objective evidence in the form of on-scene videos, an HGN test, a video taken at the police station that indicated that Appellant had the normal use of his mental and physical faculties, and a jury instruction that singled out the breath-test refusal as evidence that the jury could consider.

In final argument, the prosecutors emphasized Appellant's refusal of the tests at the time of arrest. At one point, the prosecutor said,

> And he, again, refuses everything. And if you also notice on the tape, in the middle of nowhere, he says, "Okay, I'm good." And then he's offered a breath test, and he says No. He refuses everything.

And again,

> He refused everything. Don't you think if he wasn't intoxicated, he would have done something? No, he did absolutely nothing and the defense counsel wants to fault us for that and tell us that we don't have enough evidence because the defendant refused everything.

---

[5] *See id.*; *see also* U.S. Const. amend V.

5

And yet again, "He refuses everything. And what does he say? My attorney told me not to do anything unless he was here."

In determining that the charge error was harmless, the majority relies, in part, on improperly admitted evidence. Admittedly, defense counsel lodged not a single objection during trial, except for the objection to the jury instruction. While it is proper to rely on improperly admitted evidence in conducting a sufficiency review,[6] it is not proper to rely on improperly admitted evidence in determining that the evidence of guilt was of such magnitude that the degree of harm caused by the improper jury instruction was outweighed by the quantum of the evidence of guilt. If that were the standard, cumulative error could outweigh the harm caused by charge error, rendering the charge error harmless in comparison to the other error in the case. Whether the charge error is harmless relative to the other error in the case is not the standard for reversal based on jury charge error.[7]

The trial court's instruction singling out the evidence of Appellant's refusal to submit to a breath test was an improper comment on the weight of that evidence. The prosecutor's argument magnified the injury that Appellant suffered as a result of the trial court's error. Additionally, both the jury

---

[6] *Moff v. State*, 131 S.W.3d 485, 489–90 (Tex. Crim. App. 2004).

[7] *See Almanza*, 686 S.W.2d at 171; *see also Ovalle*, 13 S.W.3d at 786.

6

instruction and the State's argument implicate Appellant's invocation of his right to counsel. Appellant's refusal was conditioned on his attorney's absence and his reliance on his attorney's instructions. He voiced this explanation repeatedly on the video. The evidence was at best equivocal on the legality of the stop, the legality of the seizure, and Appellant's guilt of the offense. Appellant therefore suffered some harm from the improper jury charge. This court should therefore sustain Appellant's second issue, reverse the trial court's judgment, and remand the case to the trial court. Because the majority does not, I must respectfully dissent.

LEE ANN DAUPHINOT
JUSTICE

PANEL: DAUPHINOT, GARDNER, and WALKER, JJ.

PUBLISH

DELIVERED: August 31, 2009

7