

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-18-00597-CR

Louis A. **MURPHY**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 175th Judicial District Court, Bexar County, Texas
Trial Court No. 2018CR3342A
Honorable Catherine Torres-Stahl, Judge Presiding

Opinion by:     Patricia O. Alvarez, Justice

Sitting:        Patricia O. Alvarez, Justice
                Luz Elena D. Chapa, Justice
                Irene Rios, Justice

Delivered and Filed: August 7, 2019

AFFIRMED

On June 29, 2018, a Bexar County jury found Appellant Louis A. Murphy guilty of retaliation, a third-degree felony. The trial court subsequently sentenced Murphy to eight years' confinement in the Institutional Division of the Texas Department of Criminal Justice, suspended and probated for a period of eight years, and assessed a fine of $2,000.00. On appeal, Murphy contends (1) the evidence is insufficient to support the jury's finding that he vandalized the home of William and Alysha Makela, (2) the trial court erred in admitting extraneous offenses, and (3)

the trial court's failure to properly answer the jury note denied Murphy a substantial right. We affirm the trial court's judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

In March 2016, William and Alysha Makela, along with their two young children, moved from Massachusetts to Bexar County, Texas. In May of 2016, the Makelas moved into the house located immediately to Murphy's right. Shortly after the Makelas moved in, Murphy approached Alysha and commented that "he [knew] when [her] husband was gone because . . . it's [his] business to know what [his] neighbors are doing." Alysha testified that her husband traveled approximately one week per month with his employment and Murphy's comment made her nervous because she did not know Murphy and she was new to the neighborhood.

On August 1, 2016, Alysha testified that she arrived home early with her one-year-old daughter. She was in her driveway and Murphy was "doing something with his lawnmower;" without provocation Murphy "called [Alysha] a Nazi bitch or a racial slur bitch." Alysha explained the statement made her even more upset because her child was present. Alysha testified she asked Murphy, "Hey, I don't understand why—why are you doing this[?]" Murphy replied, half in Spanish—which Alysha told him she did not understand—with more racial slurs and "how she deserved it." Alysha requested Murphy leave her and her family alone; Alysha also told Murphy that she was going to call the cops. Murphy told her to do so; and Alysha did.

At trial, Bexar County Deputy Alma Barbosa testified that when she arrived on August 1, 2016, Alysha appeared scared, startled, and "in fear." When Deputy Barbosa spoke to Murphy, he indicated that Alysha asked him to wash his car and that Alysha "felt he was beneath her [and] that was where the problem occurred." The officer described Murphy as aggressive, rambling, and talking loudly. Deputy Barbosa testified that she filed an incident report regarding the disturbance call.

Shortly after the August 1st incident, the Makelas installed a security camera system. When one of the cameras disappeared, the camera surveillance system was replaced with a hard-wired system, covering the entire property. In response to the security cameras, Murphy posted the following sign on his home:

Boston white privileged Nazi trash:
Using The Police Twice For Racist
Harassment & Still Here.
So Stay Off My Private Property. And
Your Nazi Camera Spying & Signs
Doesn't Intimidate Me.
Thank You! Garcia's! [sic] Je Vous Remercie!
Obrigado! Grazie!
P.S. Been Here Since June, 2009. So Kiss
My South Bronx Irish-Puerto Rican Ass. I
Am Not One Of Your Boston Blacks &
Latinos You Can Piss On Back In Boston.
To Mandinga: Alysha Makela & White Pussy Husband Willie.

On August 31, 2016, Alysha was outside gardening in the front yard. She testified that she intentionally waited until Murphy was not outside of his residence. Murphy came outside and said, "I'm going to send your monkey bitch self back to Boston." Alysha explained that she did not talk to Murphy and had no interest in talking to Murphy. She simply walked back inside her house.

On September 15, 2016, Alysha and William were in their house when they noticed Murphy spraying William's truck with a hose. William walked outside and asked Murphy to stop. Murphy began spraying William with the hose. The police were called and Bexar County Deputy Rogelio Gil charged Murphy with misdemeanor assault. Bexar County Sheriff's Office Investigator Steven Sanchez was also present at the scene. Investigator Sanchez testified Murphy made heated comments regarding the Makelas, including referring to William as "white trash," and Alysha as "Jewish." Investigator Sanchez further testified that Murphy appeared to be upset about an alleged false incident report filed on August 1, 2016; however, Investigator Sanchez tried

to explain the notation on the August 1st incident report was not what Murphy understood it to be. While the officers were still at Murphy's residence, Kortney Haywood, Ian Austin, and Victor Johnson entered the residence and began recording the officers with a cell phone.

On October 18, 2016, William was in his driveway, sitting in his truck, when Murphy pulled into his own driveway. Murphy exited the vehicle, turned to William and made a Sieg Heil salute, a gesture that was used as a greeting in Nazi Germany. On October 22, 2016, William was again in his driveway, sitting in his truck, when Murphy walked out of his garage, turned to William, and gestured as if he was pumping a pump-action shotgun. Both incidents were captured by the Makelas' security cameras and admitted as evidence at trial.

On October 24, 2016, while Alysha prepared her children for school and placed them in her van, she attempted to raise the garage door. She testified the family would "only get ready in the van inside the garage because it was not safe outside." Alysha pressed the garage door opener and the door would not open. She pressed it again, unhinged it, and "tried it again from the inside." The garage door still would not open. Alysha walked to the front door and realized the door was spray-foamed shut with spray-foam insulation. Alysha had to break the insulation to exit the house. As Alysha exited the front door, Alysha realized all of the security cameras had been cut and the garage door was sealed shut with the spray-foam insulation. Alysha and her two small children had been sealed into the house with industrial strength insulation. She looked over and Murphy was standing in his garage and said, "Look good, don't it?"

Alysha called the police. Ironically, when the cameras' wires were severed, the wrong wires were "cut" and the surveillance footage of the entire night was captured. When Alysha watched the videotape, she recognized one of the three individuals, but she testified they had never had any interactions with any of the individuals. Additionally, when Alysha looked back at the surveillance videotapes, Murphy and his girlfriend, Kortney Haywood, could be seen in Murphy's

driveway on October 24th, at approximately 8:36 a.m., smiling and taking pictures of the Makela residence.

Deputy Gil was the second officer on the scene. He was able to track a vehicle, similar looking to the vehicle visible in the surveillance tapes, to a Walmart approximately one-and-a-half miles from the residence. The deputy obtained the identity of an individual that purchased spray foam, at 2:22 a.m. on October 24, 2018. Investigator Sanchez viewed the security camera videotape from Walmart and identified Victor Johnson as purchasing the foam. Investigator Sanchez further testified he viewed the Makelas' security videotapes, recorded at 2:29 a.m. He identified three individuals: (1) Kortney Haywood; (2) Ian Austin, visible "clear as day;" and Victor Johnson, whose face could be identified quickly, his black glasses were easily discernable, and he was wearing the same two-tone gray jacket that he was wearing when he purchased the foam at Walmart.

On November 3, 2016, Alysha received the following email addressed to her Air Force work email account:

> As of October 28, 2016 I mailed the following packages via Certified Mail to Lackland AFB Judge Advocate Generals office about your Half Breed Racist Boston Ass Alysha Makela. A second package was sent to your job at AFLCMC/ HNCK 240 Hall Blvd, Suite 106 at Lackland AFB. Needless to say a third package is on it's way to Department of Defense Office of the Inspector General in Alexandria, Virginia. A born yesterday racist piss ant American Nazi like you will learn the high price for harassing an Antiwar U.S. Army retiree with the assistance of Texas State Senator Rick Galindo. As God is my witness . . . By the way I have the email sent to Rick Galindo about August 1, 2016 as he departed your house with a can of beer in his hand at approximately 7:45 pm. You once called me a GED drop out. Well I have your GED drop out now Mandinga . . . . .

Murphy was charged and ultimately found guilty of retaliation pursuant to the law of parties. The trial court subsequently sentenced Murphy to eight years' confinement in the Institutional Division of the Texas Department of Criminal Justice, suspended and probated for a term of eight years, and assessed a fine of $2,000.00.

On appeal, Murphy contends the evidence is insufficient to (1) support the jury's finding that he vandalized the Makelas' home; (2) the trial court erred in admitting extraneous offenses; and (3) the trial court's failure to properly answer the jury note resulted in Murphy's denial of a substantial right.

We turn first to whether the evidence was sufficient to support the jury's verdict.

## SUFFICIENCY OF THE EVIDENCE

### A.      Standard of Review

A claim of retaliation is viewed under a sufficiency of evidence standard. *Nandin v. State*, 402 S.W.3d 404, 407 (Tex. App.—Austin 2013, pet. ref'd). An appellate court "views the evidence in the light most favorable to the prosecution, to determine whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis original); *Merritt v. State*, 368 S.W.3d 516, 525 (Tex. Crim. App. 2012).

"The jury is the sole judge of credibility and weight to be attached to the testimony of witnesses." *Merritt*, 368 S.W.3d at 525; *accord Adames v. State*, 353 S.W.3d 854, 860 (Tex. Crim. App. 2011). Juries may draw reasonable inferences from facts supported by evidence but may not draw conclusions based on speculation. *Merritt*, 368 S.W.3d at 527. Reasonable inferences may be supported by direct or circumstantial evidence. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004)). "Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Hooper*, 214 S.W.3d at 13; *accord Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

We may not substitute our judgment for that of the jury by reevaluating the weight and credibility of the evidence. *King v. State*, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000). We defer

to the jury's responsibility to resolve any conflicts in the evidence fairly, weigh the evidence, and draw reasonable inferences. *See Hooper*, 214 S.W.3d at 13; *King*, 29 S.W.3d at 562. The jury alone decides whether to believe eyewitness testimony, and it alone resolves any conflicts in the evidence. *See Hooper*, 214 S.W.3d at 15; *Young v. State*, 358 S.W.3d 790, 801 (Tex. App.— Houston [14th Dist.] 2012, pet. ref'd). In conducting a sufficiency review, "[w]e do not engage in a second evaluation of the weight and credibility of the evidence, but only ensure that the jury reached a rational decision." *Young*, 358 S.W.3d at 801.

### B. Arguments of the Parties

Murphy contends the record is void of evidence to support Murphy's intent to promote or assist in the commission of the retaliation. Murphy further argues racial slurs and harassing behavior is not evidence of intent or that he encouraged the three individuals to commit the act of retaliation.

The State counters that a rational juror could reasonably infer Murphy encouraged Haywood, Austin, and Johnson to vandalize the Makela home out of retaliation for reporting Murphy to the police after spraying William with the hose. The State further argues the record contains a plethora of circumstantial evidence of Murphy's association with the principal offenders and Murphy's ill will and hostile behavior toward the Makelas on which the jury could rely to establish the necessary intent to find Murphy guilty as a party to the offense.

### C. Retaliation

"A person commits an offense if the person intentionally or knowingly harms or threatens to harm another by an unlawful act [i]n retaliation for or on account of the . . . status of another as a [p]erson who has reported . . . the occurrence of a crime." TEX. PENAL CODE ANN. § 36.06(a)(1)(B); *accord Cada v. State*, 334 S.W.3d 766, 770 (Tex. Crim. App. 2011). Under the law of parties, a person is criminally responsible as a party to the offense, and thus may be charged

with the commission of the offense, "if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both." TEX. PENAL CODE ANN. § 7.01(a), (b).

A person is criminally responsible for an offense committed by another if, "acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense." *Id*. § 7.02(a)(2). In determining whether a person is a criminally responsible party to an offense, the factfinder may examine the events occurring before, during, and after the commission of the offense which show an understanding and a common design to do the prohibited act. *See Padilla v. State*, 326 S.W.3d 195, 200–01 (Tex. Crim. App. 2010). Circumstantial evidence alone is sufficient to support a conviction under the law of parties. *Hooper*, 214 S.W.3d at 16.

## D.     Analysis

Alysha reported the occurrence of a crime—the assault in September 2016. *See Ortiz v. State*, 93 S.W.3d 79, 86 (Tex. Crim. App. 2002); *Umstead v. State*, 440 S.W.3d 909, 916 (Tex. App.—Eastland 2014, pet. ref'd). "A person committing an offense need not be the person against whom the prospective witness could testify if he is charged under the law of parties." *Umstead*, 440 S.W.3d at 916 (citing *Nzewi v. State*, 359 S.W.3d 829, 837 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd)). To the contrary, to convict Murphy, the evidence need only prove Murphy harbored the requisite intent to harm or threaten to harm Alysha in retaliation for or on account of Alysha's status as a person who reported a crime. *See id*.

The evidence of Murphy's ill will toward the Makelas, especially Alysha, is overwhelming. Within months of the Makelas moving into their residence, Murphy was shouting racial and ethnic slurs at Alysha. An officer testified that by August of 2016, Alysha appeared scared and in fear. The Makelas installed a security camera system that was wired into their home, with views that

covered their entire property. Alysha would only garden outside when she thought Murphy was not going to be outside his residence; but still the derogatory comments continued.

Only four months after the Makelas moved into their home, the hostility elevated such that officers were called a second time and Murphy was charged with assault. The Makelas' surveillance cameras taped Murphy making crude, racially charged gestures at William while he sat in his driveway.

The record clearly supports Alysha reported the occurrence of a crime based on her testimony and the officers' testimony. Haywood, Austin, and Johnson were known accomplices of Murphy; they had no reason to vandalize the Makelas' home outside of knowing Murphy. "[An] inference is a conclusion reached by considering other facts and deducing a logical consequence from them." *Hooper*, 214 S.W.3d at 16. The record does not contain direct evidence that Haywood, Austin, and Johnson vandalized the Makela home based on Alysha's status; however, the evidence of Murphy's ill will toward Alysha, and Murphy's relationship with the three individuals, demonstrates a nexus sufficient upon which the jury could reasonably determine Murphy encouraged or directed Haywood, Austin, and Johnson to vandalize the Makelas' home in retaliation for the September 2016 charge.

Viewing the evidence before, during, and after the events of October 24, 2016, in the light most favorable to the prosecution, *Jackson*, 443 U.S. at 319; *Merritt*, 368 S.W.3d at 525, and the cumulative effect of all the incriminating facts, *Guevara*, 152 S.W.3d at 49, we conclude a reasonable juror could find Murphy was a party to the retaliation committed by Haywood, Austin, and Johnson against Alysha on account of Alysha's reporting the occurrence of a crime. Accordingly, we overrule Murphy's first issue on appeal.

We turn to whether the trial court erroneously admitted evidence of extraneous offenses.

## ADMISSION OF EXTRANEOUS OFFENSES

To prove Murphy acted with intent to promote or assist in the offense of retaliation, the State sought to introduce six prior bad acts:

(1)   the sign calling Alysha a white supremacist bitch;

(2)   appellant confronting Alysha in her driveway, with her one-year-old daughter in tow, and calling her a Nazi bitch, among other slurs;

(3)   the "Seig Heil" salute towards William;

(4)   a "shotgun" gesture towards William;

(5)   certified letter to Alysha and employer calling her racial slurs; and

(6)   email to her work with more racial slurs.

### A.     Standard of Review

An appellate court reviews a trial court's decision to admit or exclude evidence under an abuse of discretion standard. *Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009); *Prible v. State*, 175 S.W.3d 724, 731 (Tex. Crim. App. 2005). "As long as the trial court's ruling was within the 'zone of reasonable disagreement,' there is no abuse of discretion, and the trial court's ruling will be upheld." *Prible*, 175 S.W.3d at 731 (quoting *Santellan v. State*, 939 S.W.2d 155, 169 (Tex. Crim. App. 1997)); *accord Devoe v. State*, 354 S.W.3d 457, 469 (Tex. Crim. App. 2011) (concluding that discretion is not abused if the decision falls within the zone of reasonable disagreement). "[I]f the trial court's evidentiary ruling is correct on any theory of law applicable to that ruling, it will not be disturbed" regardless of the reason for the trial court's ruling. *Devoe*, 354 S.W.3d at 469; *accord Brito Carrasco v. State*, 154 S.W.3d 127, 129 (Tex. Crim. App. 2005).

### B.     Arguments of the Parties

Murphy contends the State's only purpose for introducing the prior bad acts was to show propensity to commit the acts charged, and action in conformity therewith. Murphy argues that

introducing evidence to show how he felt about the Makelas, i.e. intent, is not an element the State was required to prove and does not make any elementary fact any more or less relevant.

The State counters that the very nature of retaliation suggests some level of hostility between the perpetrator and the victim. Without the evidence of the insults and gestures made by Murphy towards the Makelas, the jury would lack a basic understanding of the relationship.

## C.    Admissibility of Extraneous Offenses

An accused may not be tried for being a criminal generally. *Couret v. State*, 792 S.W.2d 106, 107 (Tex. Crim. App. 1990). "Evidence of extraneous offenses is not admissible at the guilt phase of a trial to prove that a defendant committed the charged offense in conformity with a bad character." *Devoe*, 354 S.W.3d at 469 (citing TEX. R. EVID. 404(b)). To be admissible, extraneous offense evidence must pass the two-prong test imposed by Texas Rules of Evidence 404(b) and 403: (1) "the extraneous offense evidence [must be] relevant to a fact of consequence in the case apart from its tendency to prove conduct in conformity with character; and [(2)] the probative value of the evidence [must not be] substantially outweighed by unfair prejudice." *Martin v. State*, 173 S.W.3d 463, 467 (Tex. Crim. App. 2005); *see* TEX. R. EVID. 403, 404(b).

"Rule 403 carries with it a presumption that relevant evidence is more probative than prejudicial." *Martinez v. State*, 155 S.W.3d 491, 497 (Tex. App.—San Antonio 2004, no pet.) (citing *Hayes v. State*, 85 S.W.3d 809, 815 (Tex. Crim. App. 2002)); *Williams v. State*, 958 S.W.2d 186, 196 (Tex. Crim. App. 1997). "The rule envisions exclusion of evidence only when there is a clear disparity between the degree of prejudice of the offered evidence and its probative value." *Robisheaux v. State*, 483 S.W.3d 205, 217 (Tex. App.—Austin 2016, pet. ref'd) (quoting *Hammer v. State*, 296 S.W.3d 555, 568 (Tex. Crim. App. 2009)).

Rule 404(b) provides that "evidence of other crimes, wrongs, or acts is not admissible 'to prove the character of a person in order to show action in conformity therewith.'" *Prible*, 175

S.W.3d at 731 (quoting TEX. R. EVID. 404(b)). "The list of exceptions under Rule 404(b) is 'neither mutually exclusive nor collectively exhaustive.'" *Id*. (quoting *Montgomery v. State*, 810 S.W.2d 372, 388 (Tex. Crim. App. 1990)). Such extraneous offense evidence may be admissible, however, "when it has relevance apart from character conformity." *Devoe*, 354 S.W.3d at 469. This may include evidence offered to "show proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Id*. (citing TEX. R. EVID. 404(b)). Additionally, extraneous evidence may be relevant and admissible to rebut a defensive theory. *Roberts v. State*, 29 S.W.3d 596, 601 (Tex. App.—Houston [1st Dist.] 2000, pet. ref'd).

"The term 'probative value' refers to the inherent probative force of an item of evidence— that is, how strongly it serves to make more or less probable the existence of a fact of consequence to the litigation—coupled with the proponent's need for that item of evidence." *Casey v. State*, 215 S.W.3d 870, 879 (Tex. Crim. App. 2007). "'Unfair prejudice' refers to a tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *Id*. "Evidence might be unfairly prejudicial if, for example, it arouses the jury's hostility or sympathy for one side without regard to the logical probative force of the evidence." *Id*. at 880.

**D.    Analysis**

Excluding relevant evidence under Rule 403 is premised on preventing a jury that has a reasonable doubt of the defendant's guilt from convicting the defendant based solely on his criminal character or because the defendant is generally a bad person. *Garcia v. State*, 201 S.W.3d 695, 704 (Tex. Crim. App. 2006). Evidence of a relationship, however, may be probative and necessary to tie together the events, which ultimately explains the offense's context. *See id*. In such situations, the need to explain the offense's circumstances may make the probative value of the extraneous offenses substantially outweigh the danger of unfair prejudice. *See id*. at 703 ("[I]n cases in which the prior relationship between the victim and the accused is a material issue,

illustrating the nature of the relationship may be the purpose for which evidence of prior bad acts will be admissible."). The court further explained materiality is generally based on the theories raised by either the State or the defense. *See id.*

The court's analysis is *Jurasek v. State* is analogous to the facts of this case. No. 13-10-00691-CR, 2012 WL 1810197 (Tex. App.—Corpus Christi May 17, 2012) (mem. op., not designated for publication). Jurasek was charged with aggravated assault with a deadly weapon. *Jurasek*, 2012 WL 1810197, at *2. The State argued four extraneous offenses—three assaults and one incident when Jurasek attempted to prevent the victim from attending a school event—were admissible to explain Jurasek's motive. *See id.* The court determined the State's extraneous acts offer was admissible to show "ill will or hostility toward the victim" and provided circumstantial evidence upon which the jury could support the existence of a motive for the alleged offense. *See id.* The nature and background of Jurasek and his victim's relationship was a material issue to the case and made extraneous offenses substantially outweigh the danger of unfair prejudice. *See id.*; *see also Coward v. State*, 931 S.W.2d 386, 387–88 (Tex. App.—Houston [14th Dist.] 1996, no pet.) (concluding cursing at victim and telling him appellant was a convict was a showing of appellant's ill will or hostility towards victim and was admissible as circumstantial evidence of the existence of a motive for appellant to commit the offense of retaliation); *Bisby v. State*, 907 S.W.2d 949, 959 (Tex. App.—Fort Worth 1995, pet. ref'd) (concluding threatening telephone calls showed appellant's ill will or hostility toward victim and were admissible as circumstantial evidence of the existence of motive for appellant to commit offense of murder).

The extraneous acts offered by the State were insults and gestures made by Murphy. Like in *Jurasek*, *Coward*, and *Bisby*, the State offered Murphy's extraneous acts to provide the jury with circumstantial evidence of Murphy's "ill will or hostility" toward the Makelas. *See Jurasek*, 2012 WL 1810197, at *2; *Coward*, 931 S.W.2d at 388; *Bisby*, 907 S.W.2d at 959; *see also Huckaby v.*

*State*, No. 02-01-301-CR, 2003 WL 21235588, at *7 (Tex. App.—Fort Worth May 29, 2003, pet. ref'd) (not designated for publication) (concluding evidence of extraneous acts of threats showed his ill will or hostility toward victim and established a possible motive for the offense and not simply character conformity) (citing *Foy v. State*, 593 S.W.2d 707, 708–09 (Tex. Crim. App. [Panel Op.] 1980) (holding evidence defendant threatened complainants with gun just weeks before their house burned down indicated defendant's ill will or hostility and was admissible in State's case in chief as circumstantial evidence of motive to commit arson)). Based on a review of the record, we cannot say the trial court abused its discretion in concluding the probative value of the evidence substantially outweighed the danger of unfair prejudice, *Garcia*, 201 S.W.3d at 703, or that the trial court's ruling was outside the "zone of reasonable disagreement," *Prible*, 175 S.W.3d at 731. Accordingly, we overrule Murphy's second appellate issue.

JURY NOTE

**A.      Standard of Review**

"Although the trial court ordinarily provides instructions to the jury in their entirety before the jury retires to deliberate, the court may give further written instructions upon the jury's written request for additional guidance regarding applicable law." *Lucio v. State*, 353 S.W.3d 873, 875 (Tex. Crim. App. 2011). "When the trial court responds substantively to a question the jury asks during deliberations, that communication essentially amounts to a supplemental jury instruction, and the trial court must follow the same rules for impartiality and neutrality that generally govern jury instructions." *Id*. When jury charge error is preserved at trial, the reviewing court must reverse if the error caused some harm. *Rogers v. State*, 550 S.W.3d 190, 191 (Tex. Crim. App. 2018) (citing *Almanza v. State*, 686 S.W.2d 157 (Tex. Crim. App. 1984) (op. on reh'g)). "Some harm" means actual harm and not a mere theoretical complaint. *Rogers*, 550 S.W.3d at 191 (citing *Cornet v. State*, 417 S.W.3d 446, 449 (Tex. Crim. App. 2012)). There is no burden of proof

associated with the harm evaluation. *Id.* If no proper objection was made at trial, an appellant will obtain a reversal only if the appellant was not afforded a fair and impartial trial and suffered "egregious harm." *Alamanza*, 686 S.W.2d at 171.

**B.     Arguments of the Parties**

Murphy contends the trial court erred by failing to properly answer the jury note resulting in Murphy being denied a substantial right.

The State contends the jury charge contained the necessary law to answer the jury note; any other answer would have been inappropriate.

**C.     Available Responses for Questions Asked by a Jury**

The Texas Code of Criminal Procedure regulates communications between the court and jurors during deliberations. *See* TEX. CODE CRIM. PROC. ANN. art. 36.27. Once the jury has retired to deliberate, to the extent possible, the trial court may only submit additional jury instructions in writing with the defendant and his counsel present. *See id*.

The jury is governed by the law it receives from the court. *See id.* § 36.13; *Lucio v. State*, 353 S.W.3d 873, 875 (Tex. Crim. App. 2011). Upon written request, a jury may receive additional written instructions providing guidance regarding applicable law. TEX. CODE CRIM. PROC. ANN. § 36.16; *Lucio*, 353 S.W.3d at 875. The rules applicable to jury charges govern a trial court's answer to a jury question. *Lucio*, 353 S.W.3d at 875. Thus, any trial court response may not express an opinion as to the weight of the evidence, sum up the testimony, discuss the facts, or use any response calculated to arouse the sympathy or excite the passions of the jury. *Id.*; *See* TEX. CODE CRIM. PROC. ANN. § 36.14; *Bartlett v. State*, 270 S.W.3d 147, 152 (Tex. Crim. App. 2008). If the request from a jury for additional instructions is not proper, the court should refer the jury to the court's charge. *See Gamblin v. State*, 476 S.W.2d 18, 20 (Tex. Crim. App. 1972). A response merely referring the jury to the original charge does not constitute an additional jury instruction.

*Merryman v. State*, 391 S.W.3d 261, 274 (Tex. App—San Antonio, 2012, pet. ref'd) (citing

*Daniell v. State*, 848 S.W.3d 145, 147 (Tex. Crim. App. 1993)).

**D.    Question Asked by the Jury**

After the jury retired to the jury room, and during their deliberation, the jury sent a written

note asking the following:

> As specifically stated in the Court's charge, is the offense of retaliation specific to
> the events on October 24, 2016, or is the charge promotion of general retaliation?

After an extensive charge hearing, and several drafts, the following application paragraph

was submitted in the Court's charge without objection:

> Now, if you find from the evidence beyond a reasonable doubt that on or about 24th
> Day of October, 2016, in Bexar County, Texas, Ian Adams, Kortney Haywood
> and/or Victor Johnson, did intentionally or knowingly harm or threaten to harm
> Alysha Makela, by an unlawful act, to-wit: by sealing the garage door and/or front
> door of William and Alysha Makela's home with expanding foam, in retaliation for
> or on account of the status of Alysha Makela as a person who reported the
> occurrence of a crime.
>
> Or, if you find from the evidence beyond a reasonable doubt that on or about 24th
> Day of October, 2016, in Bexar County, Texas, Ian Adams, Kortney Haywood
> and/or Victor Johnson, did intentionally or knowingly harm or threaten to harm
> Alysha Makela, by an unlawful act, to- wit: by cutting the wires to a surveillance
> camera from the home of William and Alysha Makela, in retaliation for or on
> account of the status of Alysha Makela as a person who reported the occurrence of
> a crime;
>
> And that the defendant, Louis Murphy, acting with the intent to promote or assist
> in the commission of the offense of retaliation, did encourage or direct Ian Adams,
> Kortney Haywood and/or Victor Johnson in the commission of the offense of
> retaliation;
>
> Then you will find the defendant guilty of retaliation as alleged in Count I of the
> indictment.

(emphasis added).

The trial court proposed "the standard [response] that says, You have all the law and

evidence. Please continue to deliberate." The State agreed. Defense counsel argued the trial court

should tell the jury "it needs to be the specific event of the 24th because that's the charge in the

indictment." Absent an explanation, defense counsel contended the jury could wrongfully convict Murphy of general retaliation. The trial court overruled defense counsel's request and provided the standard response as proposed.[1]

**E.     Analysis**

Here, the charge instructed the jury that Murphy was charged with retaliation "by sealing the garage door and/or front door of William and Alysha Makela's home with expanding foam;" and that the retaliation occurred "on or about [the] 24th Day of October, 2016." The trial court refused to answer the jury's question regarding how to view the date of the offense. Murphy did not provide the trial court, and has not provided this court, with any authority that such a response was an appropriate supplemental instruction. *See Gamblin*, 476 S.W.2d at 20. By its ruling, the trial court reiterated the jury was provided the law appropriate to the case in its original charge, and the trial court should not supplement the charge. *See Merryman*, 391 S.W.3d at 274; *cf. Lockard v. State*, 364 S.W.3d 920, 924 (Tex. App.—Amarillo 2012, no pet.) (explaining trial court properly denied appellant's proposed answer to jury question because it was effectively a supplemental jury instruction). Because the jury's request was improper, we conclude the trial court did not err in referring the jury back to the court's charge. *See Gamblin*, 476 S.W.2d at 20. Accordingly, we overrule Murphy's last issue on appeal.

CONCLUSION

Having overruled each of Murphy's issues on appeal, we affirm the trial court's judgment.

Patricia O. Alvarez, Justice

DO NOT PUBLISH

---

[1] The actual supplemental charge read as follows: "You have all the law and evidence before you. Please continue your deliberations."