

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD–0498–17

**WILLIAM ROGERS, Appellant**

**v.**

**THE STATE OF TEXAS**

### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE THIRTEENTH COURT OF APPEALS
### REFUGIO COUNTY

**KEEL, J., delivered the opinion for a unanimous Court.**

### O P I N I O N

A jury convicted Appellant of aggravated assault and burglary of a habitation with commission or attempted commission of aggravated assault. The court of appeals vacated the aggravated assault conviction on double jeopardy grounds because it was a lesser included offense of the burglary. *Rogers v. State*, 527 S.W.3d 329, 336 (Tex. App. – Corpus Christi 2017, pet. granted). We granted review of the court of appeals' holding in the burglary case that the trial court's refusal to instruct the jury on self-defense and

necessity, if error, was harmless. *Id*. at 333. We conclude that the trial court's refusal to instruct on self-defense and necessity, if error, was harmful to the defense. Consequently, we reverse and remand for the court of appeals to decide whether the trial court's ruling was erroneous.

## Standard of Review

When jury charge error is preserved at trial, the reviewing court must reverse if the error caused some harm. *Cornet v. State*, 417 S.W.3d 446, 449 (Tex. Crim. App. 2013); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g). "Some harm" means actual harm and not merely a theoretical complaint. *Cornet*, 417 S.W.3d at 449; *Sanchez v. State*, 376 S.W.3d 767, 775 (Tex. Crim. App. 2012); *Almanza*, 686 S.W.2d at 174. There is no burden of proof associated with the harm evaluation. *Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013). Reversal is required if the error was calculated to injure the rights of the defendant. *Id*., quoting *Almanza*, 686 S.W.2d at 171. The harm evaluation entails a review of the whole record, including the jury charge, contested issues, weight of the probative evidence, arguments of counsel and other relevant information. *Cornet*, 417 S.W.3d. at 450; *Almanza*, 686 S.W.2d at 171. The harm evaluation is case-specific. *Cornet*, 417 S.W.3d at 451.

Failure to instruct on a confession-and-avoidance defense is rarely harmless "because its omission leaves the jury without a vehicle by which to acquit a defendant who has admitted to all the elements of the offense." *Cornet*, 417 S.W.3d at 451. Self-

defense and necessity are confession-and-avoidance defenses. *Gamino v. State*, 537 S.W.3d 507, 511 (Tex. Crim. App. 2017) (self-defense); *Juarez v. State*, 308 S.W.3d 398, 404 (Tex. Crim. App. 2010) (necessity).

In *Cornet*, this Court found one of the rare cases in which the trial court's refusal to instruct on a confession-and-avoidance defense was harmless. The defendant was charged with three counts of aggravated sexual assault of a child alleged to have occurred on or about the same date. He was convicted of digital penetration of the female sexual organ and oral-anal contact with the child. 417 S.W.3d at 449. The defendant denied the oral-anal contact but sought to justify the digital penetration with the medical care defense. This Court reasoned that the trial court's refusal to instruct on that defense was harmless because it applied only to digital penetration, and it was "inconceivable" that the jury would have found the defendant guilty of the oral-anal contact but not guilty of the digital penetration if given the opportunity to apply the medical care defense. *Id*. at 452. Despite the lack of instruction, the prosecution urged rejection of the medical-care defense, so it appeared "that the jury considered and rejected appellant's claim that his contact with the complainant was for her medical care." *Id*. at 454. "It is clear that the jury believed the complainant and disbelieved [the defendant's] claims that he was only touching the complainant with his hand to provide medical care." *Id*. at 452.

As we detail below, this case is distinct from *Cornet* because Appellant's proposed defenses applied to both his charges, but unlike Cornet's jury, Appellant's never heard

mention of the defensive issues in any context and had no opportunity to consider them. This left Appellant with one path to an acquittal for burglary: consent to enter given by the co-owner. But that path was obstructed by the prosecution's explanations of and arguments about the meaning of consent and by the trial court's exclusion of corroborating testimony about the co-owner's consent. Because of the foregoing, the court of appeals' reasoning does not hold up to scrutiny. Consequently, unlike in *Cornet*, it is not inconceivable that a juror would have harbored a reasonable doubt about Appellant's guilt if given the opportunity to consider the defensive issues.

We turn now to the record before us.

## The Record

Evidence Before the Jury

The complainant, David Watson, testified that Appellant was hiding in his master bedroom closet and ambushed him with a gunshot to the scrotum when he came home from work on February 14, 2013. Upon being shot, the complainant grabbed Appellant with one hand and the pistol with the other, jamming his fingers into the trigger "mechanism" to prevent Appellant from firing again. He rammed Appellant backwards into the closet, and then they struggled over the gun throughout the house. During the struggle the complainant managed to grab a hunting knife, and they struggled over that, too. Eventually, Appellant escaped the complainant's grasp and fired at him but missed. When Appellant retreated to a bedroom, the complainant left via the front door and ran a

zigzag pattern to his neighbor's house while Appellant shot at him from the front porch, again missing him. The complainant and neighbors saw Appellant drive away.

Appellant, on the other hand, claimed that he had been engaged in an affair with the complainant's wife, Sandra Watson, and entered the house that day at her request to feed her cats. The complainant arrived home unexpectedly, and Appellant could not open the back door or a window to exit undetected, so he hid in the closet. According to Appellant, the complainant knew that someone was in the closet and entered it brandishing a hunting knife. Appellant reached for the .380 pistol that was next to him on top of the gun safe. The complainant grabbed his hand, and Appellant pulled the trigger. He and the complainant then struggled throughout the house for control of the knife and the gun until Appellant dropped the knife, and the complainant twisted the .380 out of his hand. Appellant then pulled his .45 pistol from his pocket and shot back toward the complainant to get him to stop. The complainant exited the house through the front door. Still unable to open the back door, Appellant left through the front door, too. He heard "pop" and saw the complainant behind a tree. Appellant returned fire in the complainant's direction as he tried to flee. He stumbled and dropped his gun, but he reached his truck and got away.

Sandra Watson did not testify.

Other Relevant Information

A singular circumstance underlay the trial of this case: The trial court granted the

State's pre-trial motion in limine to prohibit the defense from mentioning any justification defenses. The State's position was then and still is that Appellant's self-defense claim was barred because he was unlawfully carrying a weapon, and he started the fight. The State relies on language in the self-defense statute that authorizes a presumption that the actor's belief that force was immediately necessary was reasonable if, among other things, the actor "was not otherwise engaged in criminal activity" more serious than a Class C misdemeanor. TEX. PENAL CODE § 9.31(a)(3). Failure to fulfill the condition for the presumption, however, does not bar a self-defense claim. The State also fails to recognize that a defensive issue must be submitted to the jury if it is raised by any evidence, even if that evidence is contradicted or weak. *Krajcovic v. State*, 393 S.W.3d 282, 286 (Tex. Crim. App. 2013).

The trial judge, however, agreed with the State and enforced his ruling on the motion in limine throughout the trial. The defense could not qualify the venire on any justification defenses, mention them in opening statement, offer any evidence in support of them or argue them in closing. This left Appellant with one avenue for acquittal in the burglary case: Sandra's consent. As for the aggravated assault charge and the aggravated assault element of the burglary case, he was left with no avenue for acquittal.[1]

---

[1]Justification defenses like necessity and self-defense apply to "the conduct in question." TEX. PENAL CODE § 9.02. "'Conduct' means an act or omission and its accompanying mental state." § 1.07(10). Justification defenses thus apply to elements that are lesser-included offenses of the crime charged, as, for example, the aggravated assault element of the burglary charge in this case.

The court of appeals acknowledged that the trial court's rulings prevented Appellant from incorporating the defensive issues into his case but felt constrained to "examine the record for harm as it is and not how it might look if the trial court had made different rulings." *Rogers*, 527 S.W.3d at 334, fn. 1. The court of appeals held that Appellant's compliance with those rulings, i.e., his failure to rely on self-defense or necessity before the jury, weighed against a finding of harm. *Id.*, 527 S.W.3d at 333.

We used similar reasoning in *Cornet*. "Appellant's counsel did not mention the medical-care defense expressly or implicitly, and he appeared to disavow it by characterizing appellant's conduct as 'definitely inappropriate behavior,' and by arguing that 'inappropriate is not the question.'" *Cornet*, 417 S.W.3d at 454. But we also noted that the prosecution argued against the medical-care defense, suggesting that the jury considered and rejected it. *Id.* In this case, however, the jury had no opportunity to consider or reject either necessity or self-defense because the trial court's rulings prohibited any mention of them. Those rulings are other relevant information that may inform the harm analysis and should be considered as such.

The court of appeals instead looked to the punishment verdict for other relevant information and held that the 40-year sentence assessed by the jury for first degree burglary demonstrated "that the jury felt appellant bore substantial blame for the events inside [the complainant's] house." *Id.* at 334. Although the jury did not assess the life sentence urged by the prosecution, it did assess "a sentence substantially above the

minimum" which indicated its belief "that appellant was significantly blameworthy." *Id.*, quoting *Gonzales v. State*, 474 S.W.3d 345, 353 (Tex. App. — Houston [14th Dist.] 2015, pet. ref'd).

Assuming for the sake of argument that a heavy sentence might suggest harmlessness from an erroneous failure to instruct on a defensive issue, the life sentence in *Gonzales* is substantially higher than the 40-year sentence assessed here, and Appellant's prior California conviction for fatal child abuse and the victim impact testimony in the punishment phase likely played a significant role in the jury's sentencing calculus. More importantly, however, it is difficult to draw any reliable conclusions about the jury's assessment of Appellant's blameworthiness when it was prevented from hearing any defensive theories, evidence or argument.

The Jury Charge

"Owner" was defined as "a person who has title to the property, possession of the property, or a greater right to possession of the property than the person charged." "Effective consent" was defined in the abstract as "assent in fact, whether express or apparent, and includes consent by a person legally authorized to act for the owner." The application paragraph authorized conviction if the jury found beyond a reasonable doubt that Appellant entered a habitation "without the effective consent of David Watson, the owner, and therein attempted to commit or committed the felony of aggravated assault against the said David Watson[.]" Appellant's testimony conceded his commission of the

offense as defined in the application paragraph.

<u>Contested Issue:  Consent</u>

The defense did not mention consent in voir dire but argued in closing that Sandra could and did consent to his entry into the house and that the evidence of her consent was uncontroverted.

The prosecutor spent considerable time on consent in voir dire.  He correctly defined consent but also asserted that "the law in Texas is that consent, if any, of any party other than the owner named in the indictment is irrelevant in a burglary case."  That assertion is wrong.  *See Villanueva v. State*, 711 S.W.2d 739 (Tex. App. — San Antonio 1986), *pet ref'd*, 725 S.W.2d 244 (Tex. Crim. App. 1987) (per curiam) (evidence was insufficient to support burglary conviction where defendant entered house with consent of a co-owner).  The prosecutor further muddied the waters by asking hypothetical questions designed to illustrate the immaterial proposition that consent to enter a home does not equate to consent to commit crimes in the home.  He repeated that theme in closing, telling the jury that Sandra may have consented to defendant entering the house for the purpose of feeding the cats, "but she sure as heck never gave any kind of effective consent for William Rogers to go into the house and shoot her husband."

The only direct evidence of Sandra's consent was Appellant's testimony because the trial court excluded the corroborating testimony of Sandra's daughter, Catarina Rosheck, that she heard Sandra tell Appellant to feed the cats while she was out of town.

The prosecution capitalized on that ruling by pointing out in closing argument that the only evidence of Sandra's consent was Appellant's testimony. "And all that we have is just her – excuse me, the defendant's testimony that he had her permission to go there to feed the cats that day." Appellant's claim that Sandra consented to his entry into the house was supported circumstantially by the lack of forced entry into the house, his apparent deactivation of the burglar alarm with a code, and his possession of a key to the Watson house when he was arrested.

Physical Evidence

Investigators found, among other things, three shell casings outside the front door, two fired rounds embedded in walls inside the house, one of which passed through the complainant's thigh when Appellant shot him, a live round and a shell casing in the kitchen, a hunting knife in the utility room area and blood throughout the house.

The court of appeals cited three examples of physical evidence that it claimed favored the prosecution and supported its conclusion that any jury charge error was harmless. *Rogers*, 527 S.W.3d at 334. First, it cited a lack of shell casings found by the tree from behind which Appellant claimed the complainant shot at him. *Id*. But there was no evidence that anyone searched the yard for shell casings. Second, it cited the presence of shell casings outside the front door. *Id*. But Appellant admitted shooting at the complainant from that location as he fled the house. Finally, the court cited the lack of blood in areas where Appellant claimed he struggled with the complainant in the

house, thus contradicting his testimony in those respects. The court's opinion did not specify where the blood was lacking, but the State argued in closing that there was no blood in the photos of the front door or the gun cabinet. *Id*. But the lack of blood by the front door would also arguably contradict the complainant's testimony that he exited the front door after having been shot. Moreover, the exact locations of the two men's struggle shed no light on the only issue contested before the jury, i.e., Sandra's consent to Appellant's entry into the house, or on the viability of the defensive issues rejected by the trial court. Thus, the lack of blood in the photographs does not assist the harm analysis.

**Analysis**

This case is distinct from *Cornet*. Appellant's jury, unlike Cornet's, had no opportunity to consider the defensive issues; and unlike the medical care defense at issue in *Cornet*, necessity and self-defense applied to both charges that Appellant faced. Thus, the logic of the *Cornet* opinion does not apply here; it is not inconceivable that a juror would have had a reasonable doubt about Appellant's guilt if given the opportunity to consider the defensive issues.

The trial court's embargo of the defensive issues left Appellant with a single path to acquittal of burglary: Sandra's consent. The jury was prevented from fairly considering the issue because the State erroneously claimed that Sandra's consent was irrelevant. That claim was superficially supported by the application paragraph and by Appellant's admission that he had no consent from the named complainant to enter the

house. Further, the trial court excluded the proffered corroboration of Appellant's testimony about Sandra's consent, a ruling that the prosecution exploited by arguing that Appellant was the sole source of testimony about Sandra's consent. The State further undermined the jury's fair consideration of the consent issue by conflating consent to enter with consent to commit a crime. Given these circumstances, the jury's implicit rejection of Appellant's claim about Sandra's consent does not support a conclusion that it also would have rejected his justification defenses.

Similarly, the jury's punishment verdict is not persuasive evidence of harmlessness of any guilt phase jury charge error since the jury's assessment of Appellant's blameworthiness was made without any consideration of the defensive evidence. Deprived of any mention of possible defenses, the jury could not have made an informed decision about blameworthiness.

On this record, the trial court's refusal to instruct the jury on the defensive issues, assuming it was error, was calculated to injure the rights of the defendant.

## Conclusion

We reverse the court of appeals' judgment and remand for a determination of whether the trial court erred in refusing to instruct the jury on self-defense and necessity.

Delivered: June 27, 2018
Publish