**AFFIRMED as MODIFIED and Opinion Filed October 7, 2019**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-18-00760-CR

### MARCUS DEWAYNE WILLIAMS, Appellant
### V.
### THE STATE OF TEXAS, Appellee

### On Appeal from the Criminal District Court No. 2
### Dallas County, Texas
### Trial Court Cause No. F-1675985-I

## MEMORANDUM OPINION

Before Justices Pedersen, III, Reichek, and Carlyle
Opinion by Justice Reichek

A jury convicted Marcus Dewayne Williams of aggravated robbery, and the trial court assessed punishment, enhanced by a prior felony conviction, at sixty-five years in prison. In four issues, appellant argues the trial court erred in refusing a jury instruction on self-defense and committed fundamental error in allowing certain testimony by the investigating detective. For reasons discussed below, we overrule appellant's issues.

The State presents a cross-issue requesting that we modify the judgment to correct the name of the prosecutor. Our review of the judgment reveals an additional error regarding enhancement paragraphs. We modify the judgment to correct these errors and affirm as modified.

## Factual Background

On the night of June 4, 2016, longtime friends Roger Rodriguez and Jessie Ramos went to the Lower Greenville area of Dallas to eat. Jessie drove. They stayed for a few hours and left at about 1:20 a.m. On the way home, one of the tires on Jessie's car went flat. Jessie drove to a nearby tire store that he believed was still open, but it was not. He then drove to an area where two tire shops were located, but both were closed. At that point, the tire was "shredded" and Jessie could not continue to drive on it. He parked in the lot of one of the tire stores and tried, unsuccessfully, to get an Uber. While he and Roger were discussing what to do, appellant pulled up and offered assistance.

At first, Jessie asked if appellant had a spare tire. Appellant did, but the spare tire did not fit Jessie's car. Appellant then offered to give Jessie and Roger a ride home. Both Jessie and Roger said appellant was "friendly" and "nice" and they thought they could "trust" him, so they agreed. Jessie got in the back seat and Roger got in the front passenger seat. Roger gave appellant directions to their homes, which were nearby. On the way, appellant suddenly stopped the car, and Jessie and Roger thought he was having car trouble. Roger got out and walked to the front of the car and waited for appellant to open the hood. When appellant exited the car, however, he had a gun and told both Jessie and Roger to give him their wallets. Before Roger could hand appellant his wallet, appellant shot him in the stomach. Roger fell to the ground. When Roger heard a second shot, he got up and ran into a nearby neighborhood, where he hid and called 911.

After appellant shot Roger, he turned the gun on Jessie, who had also exited the car. He shot Jessie twice in the stomach and once in the arm as Jessie tried to retrieve his wallet. Jessie said he dropped his wallet, which distracted appellant long enough for Jessie to also run away. He heard another gunshot as he fled. Jessie also called 911.

Police located the men in different areas, and both were taken to the hospital. Roger was hospitalized for six days. Jessie was hospitalized for much longer due to various complications and, at the time of trial, said his diagnosis was end-stage renal failure.

Police were able to connect appellant to the shootings from the tire shop's surveillance video showing the license plate number of the car he drove that night. At trial, appellant testified similarly to Roger and Jessie that he saw them stranded at the tire shop and stopped to offer assistance. But, appellant's version of events was drastically different once Roger and Jessie entered his car.

He testified that during the drive, Roger and Jessie began speaking in Spanish and he could not understand them. One of the men then directed him to turn on to a dark street, and appellant began to get "uncomfortable." Suddenly, he said, the back seat passenger (Jessie) "grabbed" him and appellant "hit the gas," which "kind of jerked him back away from me." Appellant then hit the brakes and put the car in park. He opened the door, and the front seat passenger (Roger) tried to grab his keys, and appellant said he turned and elbowed the man in the face. Appellant got out of the car at about the same time as Roger. As he exited the car, he got a gun from under his seat. He said he felt he needed the gun because he was "threatened" and needed to "fight" for his life.

Once outside the car, appellant said one man was in front of him and the other was behind him. According to appellant, the man behind him tried to grab him, and appellant turned around and "the shot went off." Appellant was not sure if he hit the man so he shot again at the ground. Appellant said the two men ran away, and he drove off and went home. He did not call the police because he did not trust the police to believe his story. He testified that "at the end of the day, I stopped to help somebody out, two guys, and they tried to attack me and rob me."

In addition to this testimony, the jury also heard from the police officers who responded to the scene and investigated the case. Additionally, a video recording of a police interview with

appellant as well crime scene photographs and evidence collected at the scene were admitted. At the conclusion of the evidence, appellant requested a self-defense instruction, which the trial court denied.

Denial of Self-Defense Instruction

In his first issue, appellant contends the trial court erred by denying his self-defense instruction to aggravated robbery.

The jury was authorized to convict appellant of aggravated robbery if it found appellant intentionally or knowingly, while in the course of committing theft of property and with intent to obtain and maintain control of said property, caused bodily injury to Roger Rodriguez by shooting Rodriguez with a firearm, and appellant used or exhibited a deadly weapon, a firearm.

When analyzing a jury charge on appeal, we utilize a two-pronged test. *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g). The first prong requires us to determine whether error exists. *See Ngo*, 175 S.W.3d at 743. If no error is found, the analysis ends; but, if charge error is found, the error is analyzed for harm. *See Almanza*, 686 S.W.2d 171. Here, the analysis ends with first prong.

Chapter nine of the Texas Penal Code sets out the law on self-defense. It provides that a person is justified in using "force against another," including "deadly force," when the person "reasonably believes the force is immediately necessary" to protect himself from another's use or attempted use of unlawful deadly force or to prevent the other's commission of various enumerated offenses, including murder or robbery. *See* TEX. PENAL CODE ANN. §§ 9.31, 9.32. But, a defendant's use of force against another individual is not justified if the defendant provoked the other individual's use or attempted use of unlawful force. *See* TEX. PENAL CODE ANN. § 9.31(b)(4).

–4–

When a defendant is accused of murder or assault, the defendant is entitled to an instruction on the law of self-defense if he presents some evidence, even if weak or contradicted, that he reasonably believed his use of force was immediately necessary to protect himself against his victim's unprovoked use or attempted use of unlawful force. *See, e.g., Gamino v. State*, 537 S.W. 507, 512 (Tex. Crim. App. 2017) (considering self-defense instruction in aggravated assault case). However, the same is not true when a defendant is accused of robbery. *Macias v. State*, No. 08-17-00144-CR, 2019 WL 4058584, at *5 (Tex. App.—El Paso Aug. 28, 2019, no pet. h.) (not designated for publication).

As our sister court explained in *Macias*, while the penal code allows a person to respond to another's use of force by using equivalent force to protect himself, i.e., by assaulting or even killing the other person, the code does not allow a person to respond to another's use of force by committing a wholly unrelated offense against the person, such as robbery. *Id*. Thus, as other courts have recognized, including this one, a defendant who is charged with the offense of aggravated robbery has no legal right to claim self-defense against his intended victim, and is therefore not entitled to receive a self-defense instruction. *Id*. (citing *Russell v. State*, No. 05-17-00124-CR, 2018 WL 525559, at *10 (Tex. App.—Dallas Jan. 24, 2018, pet. ref'd) (mem. op., not designated for publication) (defendant had no right to a jury instruction on self-defense with regard to robbery allegations in indictment); *Gorman v. State*, No. 04-03-00311-CR, 2004 WL 2450875, at *1 (Tex. App.—San Antonio Nov. 3, 2004, pet. ref'd) (mem. op., not designated for publication) (defendant charged with aggravated robbery with a deadly weapon had no right to receive a jury instruction on the law of self-defense); *Toliver v. State*, No. 01-87-00591-CR, 1988 WL 15126, at *1 (Tex. App.—Houston [1st Dist.] Feb. 25, 1988, pet. ref'd) (not designated for publication) (defendant accused of aggravated robbery was not entitled to a self-defense instruction)).

Moreover, self-defense is a confession-and-avoidance defense that justifies conduct that would otherwise be unlawful. *Rogers v. State*, 550 S.W.3d 190, 192 (Tex. Crim. App. 2018). When the defensive evidence merely negates the necessary culpable mental state, it will not suffice to entitle the defendant to a self-defense instruction. *Shaw v. State*, 243 S.W.3d 647, 659 (Tex. Crim. App. 2007). Rather, a defendant is entitled to a self-defense instruction only "when the defendant's defensive evidence essentially admits to every element of the offense *including* the culpable mental state, but interposes the justification to excuse the otherwise criminal conduct." *Id.*

Thus, even assuming self-defense defense could apply to an aggravated robbery charge, appellant did not admit to every element of the offense. To the contrary, appellant testified that he stopped to help the two men and was attacked. He said the first shot just "went off" when one of the men grabbed him and he shot a second time at the ground. He told jurors he did not even know if anyone was hit. He did not admit shooting Roger to further or complete a theft. Rather, appellant's testimony was that he committed no offense and not that his commission of aggravated robbery was justified as self-defense. *See Young v. State*, 991 S.W.2d 835, 839 (Tex. Crim. App. 1999) (concluding defendant not entitled to necessity instruction because he merely "argued he did not commit the offense because he did not have the requisite intent and he did not perform the actions the State alleged").

We conclude the trial court did not err in denying appellant's request for a jury instruction on self-defense. We overrule the first issue.

### Admission of Evidence

In issues two through four, appellant contends the trial court committed fundamental error by permitting the investigating detective to testify that (1) he did not believe there was any truth to appellant's statement that Roger and Jessie were trying to rob or harm him; (2) he did not

believe, based upon the totality of the circumstances and through all of his investigation, that Jessie or Roger tried to harm appellant; and (3) based upon his investigation, he believed appellant shot Roger and Jessie after attempting to steal their wallets and that there was no evidence to suggest otherwise. Recognizing no objection was made to any of this testimony, appellant argues on appeal the error is "fundamental" requiring no objection.

The court of criminal appeals has explained that rights not requiring an objection are a "narrow exception" to the general rule that error must be preserved. *See Grado v. State*, 445 S.W.3d 736, 739 (Tex. Crim. App. 2014). In fact, the court of criminal appeals has "consistently held that the failure to object in a timely and specific manner during trial forfeits complaints about the admissibility of evidence." *Fuller v. State*, 253 S.W.3d 220, 232 (Tex. Crim. App. 2008).

Here, appellant does not explain why these complaints are not forfeitable. After reviewing the complaints, we see no reason why they should not require an objection below. *See Fuller*, 253 S.W.3d at 232 (concluding that, in capital murder trial, complaints about State's expert's qualifications and scientific reliability of his testimony were forfeited for failure to object); *Saldano v. State*, 70 S.W.3d 873, 889 (Tex. Crim. App. 2002) (holding, despite State's confession of error, that defendant's claim that State's testimony improperly appealed to jurors' racial prejudices in violation of Equal Protection Clause did not implicate an "absolute, systemic requirement nor a right that is waivable only" and concluding failure to object forfeited claim); *Proenza v. State*, 541 S.W.3d 786, 797 (Tex. Crim. App. 2017) (explaining that trial judge has no duty to exclude, for example, hearsay absent objection and "would probably fall into error if he did"). Accordingly, none of these complaints are preserved for review. We overrule issues two through four.

Modifications to Judgment

In a cross-issue, the State requests that we modify the judgment to reflect that Alicia Patterson, not Lakesha Smith, represented the State in this case. A review of the record shows the State is correct.

After reviewing the judgment, this Court noted an additional error: the judgment shows that appellant pleaded true to two enhancement paragraphs and the findings on both paragraphs were true. The record, however, shows that only one enhancement paragraph was alleged in this case.

We have the authority to correct a judgment below to make the record "speak the truth" when we have the necessary data and information to do so. *Asberry v. State*, 813 S.W.2d 526, 529 (Tex. App.—Dallas 1991, pet. ref'd). Accordingly, we modify the trial court's judgment to correct the prosecutor's name and to reflect that no plea and no finding was made on a second enhancement paragraph.

As modified, we affirm the trial court's judgment.

/Amanda L. Reichek/
AMANDA L. REICHEK
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b)
180760F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

MARCUS DEWAYNE WILLIAMS,
Appellant

No. 05-18-00760-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court
No. 2, Dallas County, Texas
Trial Court Cause No. F-1675985-I.
Opinion delivered by Justice Reichek;
Justices Pedersen, III and Carlyle
participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** as follows:
(1) to reflect Alicia Patterson was the Attorney for the State and
(2) to delete the plea and findings of True on the sections regarding a 2nd Enhancement Paragraph and to show N/A to both sections.

As **MODIFIED**, the judgment is **AFFIRMED**.

Judgment entered October 7, 2019