

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-18-00540-CR

_____

WARREN GENE KEMP, Appellant

V.

THE STATE OF TEXAS

On Appeal from the 235th District Court
Cooke County, Texas
Trial Court No. CR17-00356

Before Kerr, Birdwell, and Bassel, JJ.
Memorandum Opinion by Justice Birdwell

## MEMORANDUM OPINION

From the outside, it was a house like any other—except, perhaps, for the disconnected oven on the front porch. Inside, though, the house was brimming with trash bags, boxes, and bins full of goods. Some of the evidence at trial showed that when appellant Warren Gene Kemp burglarized the house, no one lived there; the owner was simply using it for storage while she moved into another house.

Kemp argued that because the premises were uninhabited and so cluttered as to be uninhabitable, this was some evidence that he was guilty only of the lesser-included offense of burglary of a building rather than the greater offense for which he was indicted: burglary of a habitation. But the trial court denied Kemp's request for an instruction on the lesser-included offense. Because there was more than a scintilla of evidence that affirmatively supported the lesser-included offense, we hold that it was error to deny the instruction. We therefore reverse and remand.

## I. BACKGROUND

On the afternoon of June 15, 2017, Mary McConnell looked out her window and saw a man she did not recognize in her neighbor's backyard. McConnell watched the man go in and out of her neighbor's house, and she called police to report a break in. When police arrived, they shouted for the man to come outside. The man—Kemp—complied. Kemp was arrested, and he was found with items that belonged to the property owner. The owner told police that she did not give Kemp consent to enter her house.

Kemp was indicted for burglary of a habitation, a second-degree felony. Tex. Penal Code Ann. § 30.02(c)(2). But at trial, Kemp argued that if anything, his crime was the lesser-included offense of burglary of a building, a state-jail felony. *Id.* § 30.02(c)(1). Kemp adduced evidence that at the time of the burglary, the owner had moved to one of the other houses she owned in town and that she was using the burgled premises as storage space. Further, Kemp noted the photographs and testimony suggesting that the interior of the home was packed with stored goods, which he argued made the home unlivable. Kemp argued that in light of this evidence, the property should be considered a building but not a habitation. The State countered with testimony that the owner still slept at the house occasionally, had a bed and clothes there, and often kept her dog there, among other evidence suggesting that the premises was still a habitation.

Kemp requested a jury instruction on the lesser-included offense of burglary of a building. The trial court denied the request and charged the jury only on burglary of a habitation. The jury found Kemp guilty as charged, and the trial court assessed punishment at thirty-five years' confinement. Kemp appeals the trial court's refusal of an instruction on the lesser-included offense.

## II. DISCUSSION

We analyze two steps to determine whether an appellant was entitled to a lesser-included-offense instruction: (1) Are the elements of the lesser-included offense included within the proof necessary to establish the charged offense's elements? (2) Is

3

there evidence in the record from which a jury could find the defendant guilty of only the lesser-included offense? *State v. Meru*, 414 S.W.3d 159, 161 (Tex. Crim. App. 2013); *Hall v. State*, 225 S.W.3d 524, 528, 535–36 (Tex. Crim. App. 2007); *Rousseau v. State*, 855 S.W.2d 666, 672–73 (Tex. Crim. App. 1993).

The first step in the lesser-included-offense analysis is a legal question and so does not depend on the trial evidence. *Hall*, 225 S.W.3d at 535. An offense is a lesser-included offense if the indictment for the greater-inclusive offense either alleges all the lesser-included-offense elements or alleges elements plus facts—including descriptive averments such as nonstatutory manner and means—from which we can deduce all the lesser-included-offense elements. *Ex parte Watson*, 306 S.W.3d 259, 273 (Tex. Crim. App. 2009) (op. on reh'g).

As to the first step, the same predicate offense of burglary underlies both burglary of a building and burglary of a habitation, which differ only in the nature of the premises invaded. *See* Tex. Penal Code Ann. § 30.02(a). Our highest criminal court has recognized many times that burglary of a building may be a lesser-included offense of burglary of a habitation. *Puente v. State*, 320 S.W.3d 352, 357 n.15 (Tex. Crim. App. 2010) (citing *Allison v. State*, 618 S.W.2d 763, 764–65 (Tex. Crim. App. 1981)); *Wilson v. State*, 677 S.W.2d 518, 522 (Tex. Crim. App. 1984); *Moss v. State*, 574 S.W.2d 542, 545 (Tex. Crim. App. 1978), *overruled on other grounds by Garrett v. State*, 749 S.W.2d 784 (Tex. Crim. App. 1986). And here, the State concedes that burglary of a building is a lesser-included offense.

But the State argues that Kemp cannot satisfy step two. Under the second step, the record must contain some evidence that would permit a jury to rationally find that the appellant is guilty only of the lesser offense. *Hall*, 225 S.W.3d at 536; *Salinas v. State*, 163 S.W.3d 734, 741 (Tex. Crim. App. 2005); *Rousseau*, 855 S.W.2d at 672–73. In other words, the evidence must establish the lesser-included offense as "a valid, rational alternative to the charged offense." *Hall*, 225 S.W.3d at 536. This is a fact determination based on all the evidence presented at trial. *Meru*, 414 S.W.3d at 163. If anything more than a scintilla of evidence raises a fact issue of whether the defendant is guilty only of the lesser offense—regardless of whether the evidence is weak, impeached, or contradicted—we must conclude that the trial court erred by failing to give an instruction on the lesser-included offense. *See Ritcherson v. State*, 568 S.W.3d 667, 677 (Tex. Crim. App. 2018); *Hall*, 225 S.W.3d at 536.

"Although this threshold showing is low, it is not enough that the jury may disbelieve crucial evidence pertaining to the greater offense . . . ." *Sweed v. State*, 351 S.W.3d 63, 68 (Tex. Crim. App. 2011) (internal quotations omitted). There must be some evidence directly germane to the lesser-included offense for the finder of fact to consider before an instruction on a lesser-included offense is warranted. *Id.* This standard may be satisfied if some evidence refutes or negates other evidence establishing the greater offense or if the evidence presented is subject to different interpretations. *Id.*

The question, therefore, is whether there is some evidence directly germane to whether the burgled property was merely a building and not a habitation. A "building" is any enclosed structure intended for use or occupation as a habitation or for some purpose of trade, manufacture, ornament, or use. Tex. Penal Code Ann. § 30.01(2). As relevant here, a "habitation" is defined as a structure or vehicle that is adapted for the overnight accommodation of persons. *Id.* § 30.01(1). What makes a structure suitable or not suitable for overnight accommodation is a complex, subjective, factual question fit for a jury's determination. *Salazar v. State*, 284 S.W.3d 874, 877 (Tex. Crim. App. 2009) (quoting *Blankenship v. State*, 780 S.W.2d 198, 209 (Tex. Crim. App. 1989) (op. on reh'g)). We consider relevant factors such as whether someone was using the structure or vehicle as a residence at the time of the offense; whether the structure or vehicle contained bedding, furniture, utilities, or other belongings common to a residential structure; and whether the structure is of such a character that it was probably intended to accommodate persons overnight (e.g. house, apartment, condominium, sleeping car, mobile home, or house trailer). *Blankenship*, 780 S.W.2d at 209. All of these factors are relevant; none are essential or necessarily dispositive. *Id.*

Viewed through the lens of these factors, some of the record evidence suggests that the property was not a habitation in the eyes of the criminal law. In her 911 call, McConnell explained that nobody lived next door. The property owner lived elsewhere, McConnell told the 911 operator, and a grey, older-looking car sat untouched in the driveway. Photographs showed that the grass was overgrown—indeed, Kemp initially

6

told officers that he was there to cut the grass.[1]  Other photographs showed that the living room, dining room, and back room were overflowing with goods, to the point that much of the floorspace was choked and impassable.[2]  The owner agreed that she asked officers not to photograph the other rooms in the house, which "may have" been because she was embarrassed at the greater level of clutter in those rooms.  On the front porch there sat an unused oven in the open air, and the owner's father explained that the doorbell had been broken for some time.[3]  When asked about the last time that she stayed overnight at the house—whether it had been days, weeks, or months—the owner said she could not remember and explained that she had several other properties

---

[1]*Cf. Gordon v. State*, No. 03-15-00239-CR, 2016 WL 3753145, at *2 (Tex. App.—Austin July 8, 2016, pet. ref'd) (mem. op., not designated for publication) (holding evidence sufficient to support a finding that the house was a habitation in part because there was evidence that the homeowner "hired a lawn service to mow the lawn every two weeks"); *DiMaggio v. State*, No. A14-91-00838-CR, 1992 WL 99568, at *2 (Tex. App.—Houston [14th Dist.] May 14, 1992, no pet.) (not designated for publication) (holding that "[d]espite" the evidence concerning overgrown greenery around the property, the trial court did not err in refusing a defensive instruction concerning whether the burgled premises was abandoned).

[2]*Cf. Barrera v. State*, No. 11-16-00332-CR, 2018 WL 3469550, at *2 (Tex. App.—Eastland July 19, 2018, no pet.) (mem. op., not designated for publication) (agreeing that where "the house had been vacant . . . and was being used for storage," this cut against a habitation finding); *Qualls v. State*, No. 11-98-00061-CR, 1999 WL 33747851, at *2 (Tex. App.—Eastland Aug. 26, 1999, no pet.) (not designated for publication) (holding the evidence was sufficient to support a habitation finding despite evidence that the house was temporarily "uninhabitable," citing other factors that outweighed this evidence).

[3]*Cf. DiMaggio*, 1992 WL 99568, at *2 (reasoning impliedly that a long-broken window favored a conclusion that the burgled premises were abandoned).

7

around town. Taken together, this proof amounts to more than a scintilla of evidence that the premises were unoccupied, in low upkeep, and brimming to capacity with stored goods, and from this evidence, the jury could have rationally concluded that the property better resembled a building than a habitation. *See Ritcherson*, 568 S.W.3d at 677.

In rejoinder, the State cites several forms of contrary evidence that would support a habitation finding. The property was a residence with plumbing, electricity, and furnishings. Three witnesses testified that in one sense or another, the owner still lived at the house: the owner said that she still slept there occasionally; her father believed that she might have even slept there the night before the burglary; and at some points during her testimony, McConnell said the owner still lived next door. The owner also testified that she had a bed and clothes there, kept the utilities current, and boarded her dog in the back yard. We agree that a jury might find this evidence compelling.

But for present purposes, all that this evidence establishes is that the crime and its setting were subject to differing interpretations. *See Sweed*, 351 S.W.3d at 68. It is not our role to decide which interpretation was more reasonable, even if the State's evidence was "overwhelming."[4] *See Wortham v. State*, 412 S.W.3d 552, 558 (Tex. Crim.

_____

[4]The State relies on *Hicks v. State* to dissuade us from finding that there is evidence to support the lesser-included burglary offense. 204 S.W.3d 505, 506 (Tex. App.—Amarillo 2006, no pet.) (mem. op.). In *Hicks*, a building sat uninhabited, empty of furniture and personal items, with the heater disconnected. *Id.* The court held that this "minimal evidence" did not warrant a lesser-included-offense instruction when contrasted with the contrary evidence: that the owner was attempting to relet the house,

8

App. 2013). "Resolving conflicts in evidence is the jury's job, not ours when determining whether the evidence supports a lesser-included-offense instruction." *Goad*, 354 S.W.3d at 448. It is the jury's province to decide which parts of this evidence to believe, and within that province, the jury could have rationally credited the evidence that the property was a mere building. *See Bullock v. State*, 509 S.W.3d 921, 929 (Tex. Crim. App. 2016). Because the evidence established Kemp's theory as a rational alternative, the trial court erred in refusing to put that theory before the jury. *See Hall*, 225 S.W.3d at 536.

Having found error, we now assess harm. When charge error is preserved at trial, the reviewing court must reverse if the error caused some harm. *Rogers v. State*, 550 S.W.3d 190, 191 (Tex. Crim. App. 2018); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g). "Some harm" means actual harm and not merely a theoretical complaint. *Rogers*, 550 S.W.3d at 191. There is no burden of proof associated with the harm evaluation. *Id.* This evaluation entails a review of the whole

---

which was not only "wired for electricity but also plumbed for water and gas" and had a "kitchen, bathroom, water heater, heater, and roof." *See id.* at 507–08. The *Hicks* court appeared to reason that when the State introduced compelling evidence that the burgled premise was a habitation, this negated and overcame any evidence suggesting that the structure was simply a building.

But the Texas Court of Criminal Appeals disapproved this sort of reasoning in *Wortham*, which makes clear that it is improper to inquire whether the evidence in favor of the greater offense "overwhelmed" the evidence supporting the lesser-included offense. 412 S.W.3d at 558; *see Goad v. State*, 354 S.W.3d 443, 448 (Tex. Crim. App. 2011) (similar). We therefore decline to rely on *Hicks* as persuasive authority.

9

record, including the jury charge, contested issues, weight of the probative evidence, arguments of counsel, and other relevant information. *Id.* at 192.

As to the jury charge, the Texas Court of Criminal Appeals has "consistently" and "routinely" found some harm when, as here, the erroneous denial of a lesser-included-offense instruction leaves the jury with "the sole option either to convict the defendant of the greater offense or to acquit him." *Saunders v. State*, 913 S.W.2d 564, 571 (Tex. Crim. App. 1995). "[T]he harm from denying a lesser offense instruction stems from the potential to place the jury in the dilemma of convicting for a greater offense in which the jury has reasonable doubt or releasing entirely from criminal liability a person the jury is convinced is a wrongdoer." *Masterson v. State*, 155 S.W.3d 167, 171 (Tex. Crim. App. 2005). In this scenario, "'some' harm occurs because the jury was not permitted to fulfill its role as factfinder to resolve the factual dispute whether the defendant committed the greater or lesser offense." *Saunders*, 913 S.W.2d at 571.

There is nothing in the contested issues, record evidence, or arguments of counsel that would give us reason to break from what is otherwise an "essentially automatic" finding of harm. *See Cardona v. State*, No. 02-15-00036-CR, 2015 WL 9244829, at *5 (Tex. App.—Fort Worth Dec. 17, 2015, pet. ref'd) (mem. op., not designated for publication). Indeed, these factors only confirm the harm, because the denial of this instruction rendered futile one of Kemp's chief defensive strategies at trial: to steer the jury toward the lesser-included offense. For instance, the property's

status as a building or habitation was a major theme during Kemp's opening argument, and questions on this topic took up roughly two-thirds of Kemp's cross-examination of the property owner; the rest of his defensive questions fit into the remaining third. When the trial court refused the requested instruction, much—if not most—of Kemp's efforts at trial went to naught.

Courts have also concluded that the defendant suffers some harm when the penalty imposed for the greater offense exceeds the maximum penalty for the lesser-included offense. *See, e.g.*, *Bridges v. State*, 389 S.W.3d 508, 513 (Tex. App.—Houston [14th Dist.] 2012, no pet.) ("[A]ppellant's conviction for aggravated assault carried a punishment of 15 years' imprisonment, whereas the maximum punishment for a conviction for assault by threat would have been a $500 fine. Thus, appellant suffered harm." (citations omitted)). That rule has bearing here, because Kemp was sentenced to thirty-five years' imprisonment and a fine of $10,000, whereas the maximum punishment for the lesser-included offense—a state-jail felony enhanced for two prior state-jail felonies—would have been ten years in prison and a fine of $10,000. *See* Tex. Penal Code Ann. §§ 12.34, 12.425(a), 30.02(c).

For all these reasons, we hold that the erroneous denial of an instruction on the lesser-included offense was harmful. We therefore sustain Kemp's sole issue.

### III.   CONCLUSION

We reverse the trial court's judgment and remand the case for a new trial.


/s/ Wade Birdwell
Wade Birdwell
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered:  March 26, 2020