

# NUMBER 13-18-00586-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

BETHANY GRACE MACIEL,                                      **Appellant,**

**v.**

THE STATE OF TEXAS,                                        **Appellee.**

**On appeal from the County Court at Law No. 1
of Brazos County, Texas.**

# DISSENTING OPINION ON REMAND

**Before Justices Benavides, Tijerina, and Peña
Dissenting Opinion on Remand by Justice Benavides**

In a unanimous opinion, the Texas Court of Criminal Appeals has already determined that, based on the evidence presented at trial, "a jury could reasonably infer that [Maciel] operated a motor vehicle while intoxicated because she reasonably believed that doing so was immediately necessary to avoid imminent danger." *Maciel v. State*, 631

S.W.3d 720, 725 (Tex. Crim. App. 2021). Despite this clear holding, the majority goes to great lengths to explain why it believes the same evidence was so weak that no reasonable juror could ever reach that very conclusion. For example, according to the majority, "there was no evidence of a specific impending and imminent harm," and thus, Maciel's belief that she needed to immediately move the car off the road was unreasonable as a matter of law. While I agree that Maciel's necessity defense was contested at trial, the high court has already determined that the record contains sufficient evidence to support each element of the defense. *Id.* Therefore, in assessing actual harm, "we [should] not weigh in on this fact-specific determination, as that is a function reserved for a properly instructed jury." *Reeves v. State*, 420 S.W.3d 812, 820 (Tex. Crim. App. 2013). Because the majority has invaded the province of the jury as the fact finder, and the record plainly demonstrates that Maciel suffered actual harm, I respectfully dissent.

## I. APPLICABLE LAW & STANDARD OF REVIEW

"The Fifth, Sixth, and Fourteenth Amendments to the United States Constitution guarantee the accused in a criminal prosecution the right to 'a meaningful opportunity to present a complete defense.'" *Rogers v. State*, 664 S.W.3d 843, 848–49 (Tex. Crim. App. 2022) ("*Rogers II*") (quoting *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006)). Accordingly, in Texas, a "defendant is entitled to an instruction on any defensive issued raised by the evidence, whether that evidence is weak or strong, unimpeached or uncontradicted, and regardless of how the trial court views the credibility of the defense." *Maciel*, 631 S.W.3d at 723 (quoting *Celis v. State*, 416 S.W.3d 419, 430 (Tex. Crim. App. 2013)). When the defendant preserves a jury charge error at trial, as was the case here,

"the reviewing court must reverse if the error caused some harm." *Rogers v. State*, 550 S.W.3d 190, 192 (Tex. Crim. App. 2019) ("*Rogers I*"). In other words, "an error which has been properly preserved by objection will call for reversal as long as the error is not harmless." *Reeves*, 420 S.W.3d at 816 (quoting *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985)).

This is a "less-stringent standard" than the egregious-harm standard used when the defendant fails to object to the erroneous charge. *Id.* Neither party carries a burden to prove or disprove harm. *Id.* Instead, we determine if the record shows that the appellant suffered actual harm by considering the entirety of the evidence, the arguments of counsel, the jury charge as a whole, and any other relevant factors present in the record. *Id.*

Before turning to the record, it is noteworthy that the Court of Criminal Appeals recently reiterated that "[f]ailure to instruct on a confession-and-avoidance defense is rarely harmless." *Rogers I*, 550 S.W.3d at 192. The majority indirectly relies on a case, *Cornet v. State*, 417 S.W.3d 446 (Tex. Crim. App. 2013), that the high court has since distinguished as "one of the rare cases in which the trial court's refusal to instruct on a confession-and-avoidance defense was harmless." *Rogers I*, 550 S.W.3d at 192 (discussing *Cornet*). The majority avoids any direct comparison between this case and *Cornet* for good reason; as discussed below, *Cornet* presented unique circumstances that do not exist in this case.

### III.    THE EVIDENCE

As the Court of Criminal Appeals noted, Maciel repeatedly testified that she was

3

scared because her brother had stopped their vehicle in the middle of the road at night and exited the car to throw up. *Maciel*, 631 S.W.3d at 725. Admittedly intoxicated, she climbed over the console and got behind the wheel for the sole purpose of moving the car to safety in an adjacent parking lot. *Id.* The Court concluded that this testimony, along with other evidence, was legally sufficient for a jury to determine "that [Maciel] operated a motor vehicle while intoxicated because she reasonably believed that doing so was immediately necessary to avoid imminent danger." *Id.*

Nevertheless, in reaching the opposite conclusion, the majority posits that we are not constrained by this holding because, unlike the initial error analysis, we are not required to view the evidence in the light most favorable to the instruction when conducting the separate harm analysis. I have found no authority to support the majority's conclusion that an affirmative defense can be "raised by the evidence" under an error analysis but not a harm analysis. *See Rogers II*, 664 S.W.3d at 851. Either the evidence is sufficient to raise an affirmative defense, or it is not, and because the Court of Criminal Appeals has already answered that question, we are constrained by the law of the case doctrine from now concluding that there was "no evidence" of Maciel's necessity defense. *See State v. Swearingen,* 424 S.W.3d 32, 38 (Tex. Crim. App. 2014) ("Since we have previously held that, as a matter of law, the appellee had not met his burden of proof as to the existence of biological material, and because the legislature's amendment did not alter this result except in the case of the fingernail scrapings, the trial court erred under the law of the case doctrine when it disregarded our previous holding.").

Even if we were writing on a blank slate, the majority repeats the mistake we made

4

the first time this case was before us by focusing on evidence contrary to Maciel's necessity defense and every perceived weakness and inconsistency in her testimony. *See Maciel*, 631 S.W.3d at 724 ("While the court of appeals only looked at the evidence which undermined the request for the instruction, it failed to look at the following evidence supporting it . . . ."). This dim approach to the evidence is inconsistent with Maciel's entitlement "to an instruction on any defensive issued raised by the evidence, whether that evidence is weak or strong, unimpeached or uncontradicted, and regardless of how the [appellate] court views the credibility of the defense." *Id.* at 724 (quoting *Celis*, 416 S.W.3d at 430). Moreover, once an affirmative defense has been adequately raised, as was the case here according to the Court of Criminal Appeals, the resolution of that fact question should be left to the jury to decide. *Reeves*, 420 S.W.3d at 820. Looking at the state of the evidence through the proper lens, this factor clearly militates in favor of finding actual harm.

## IV.   OTHER RELEVANT FACTORS

I also disagree with the majority's characterization of Maciel's necessity defense as being secondary to, or inconsistent with, her other defensive theory that she did not legally operate the vehicle. To be sure, there is a logical sequence to the two defensive theories. Maciel believed that she did not technically "operate" the vehicle because, despite her efforts to do so, she was unable to move the vehicle. *Maciel*, 631 S.W.3d at 724. However, as the Court of Criminal Appeals put it, "[Maciel] was essentially saying that if she was operating a motor vehicle, it was only for the purpose of necessity." *Id.* at 725. Indeed, contrary to the majority's suggestion, Maciel's necessity defense was not

5

some mere afterthought; instead, it was central to her defensive strategy during most of the trial. For example, after eliciting favorable evidence from the State's witness, Officer Shaw, about the potentially dangerous nature of the situation, Maciel's trial counsel expressly introduced her necessity defense throughout his opening statement:

> So [Maciel's brother] abruptly stops the car in the middle of the road; doesn't pull to the side, as you saw. The car is in the middle of the road in between lights. He stops the vehicle, gets out, proceeds to get sick.
>
> [Maciel] at this point is panicked, okay? The sister-in-law is panicked. They are scared. They are in the middle of the road, okay? It's a dangerous situation to be in. Her brother is getting sick, okay? She's worried about him.
>
> So what does she do? She climbs across the console and gets into the driver's seat. She climbs across the console to get in the driver's seat with the intention of moving the vehicle off the road, moving the vehicle, getting to safety; and they can figure out what they—how to get home from there.
>
> That's what the cops found, okay? And why she couldn't move the vehicle, a number of factors, probably. She was panicked. She was scared and intoxicated. Okay? She simply could not figure out how to get the car moving, and that's what you saw. That's what the cop saw when he arrived. The fact is that she just couldn't get the vehicle moving at the time. That's why it's smoking. That's why the engine is smoking.
>
> She wasn't trying to drive home at that point. She was trying to get them off the road, get the car to safety. As you've heard, that's a dangerous situation to be in. That's when the cop shows up and everything else you've seen at that point, okay? And I think you saw at that point—and we will reiterate—that she's a confused woman, a scared woman, concerned woman for her brother. Her brother is continuing, even as the officers are there, vomiting on the side, the side of the vehicle.
>
> Ladies and gentlemen, that's what we intend to show. That's what the evidence will show. We are not here to say that [appellant] didn't necessarily make some mistakes, okay? She had too much to drink. She made the mistake of getting in the vehicle with her brother. What she didn't do was make the mistake of trying to operate the vehicle beyond getting it off the road out of danger.

6

Afterwards, Maciel testified to these very facts, and the Court of Criminal Appeals concluded that her testimony, along with other evidence, was sufficient to raise a necessity defense. *Id.* Therefore, Maciel's two defensive theories worked in tandem rather than disjunctively, and this further suggests that the error in omitting the defensive instruction was harmful.

## V. ARGUMENTS OF COUNSEL

As further support for its decision, the majority claims "Maciel did not present a justification defense in her closing argument which the jury was prevented from believing had they been provided a necessity instruction." That is not an entirely accurate representation of the record. After the trial court denied her requested necessity instruction, Maciel understandably chose to focus on her lack-of-operation defense during closing. However, she also continued to cautiously press her necessity defense: "Even if you believe that [Maciel operated the vehicle], you can still consider the motive. She wasn't trying to operate the vehicle to drive it. She was trying to operate the vehicle to get it off the road. That matters. It should matter. It does matter."

But Maciel had to tread carefully. Before closing, the jury received the trial court's charge, which did not include Maciel's requested necessity instruction. The purpose of this charge was to "inform the jury of the applicable law and guide them in its application to the case," *Delgado v. State*, 235 S.W.3d 244, 249 (Tex. Crim. App. 2007), and "it is the duty of the jury to follow the law as it is laid down by the court." *Sparf v. United States*, 156 U.S. 51, 74 (1895); *see* TEX. CODE CRIM. PROC. ANN. art. 36.13 (explaining that "the jury is the exclusive judge of the facts, but it is bound to receive the law from the court

7

and be governed thereby"). Therefore, as far as the jury was concerned, the "law applicable to the case" did not include Maciel's necessity defense. *See Bell v. State*, 635 S.W.3d 641, 645 (Tex. Crim. App. 2021) (quoting TEX. CODE CRIM. PROC. ANN. art. 36.14).

Thus, explicitly arguing a necessity defense would have been objectionable on multiple grounds, including an inappropriate request for jury nullification. *See Lumsden v. State*, 564 S.W.3d 858, 900 (Tex. App.—Fort Worth 2018, pet. ref'd) ("Jury nullification is not an argument that a defendant is entitled to make because there is no constitutional right to jury nullification and because there is no constitutional requirement that the jury be instructed on nullification." (citing *Ramos v. State*, 934 S.W.2d 358, 367 (Tex. Crim. App. 1996))). Under these circumstances, we should not penalize Maciel for giving due respect to the trial court's ruling, which essentially required her to abandon her necessity defense during closing arguments.[1] *See Rogers I*, 550 S.W.3d at 194 (finding actual harm where the trial court's rulings prevented defendant from presenting necessity and self-defense to the jury and disagreeing with the court of appeals' conclusion that defendant's "compliance with those rulings . . . weighed against a finding of harm").

Conversely, with other types of jury charge errors, the arguments made by the parties feature prominently in the harm analysis. This is particularly true when the charge *includes* an improper instruction, and the State emphasizes the improper instruction to the jury. *See, e.g., Ngo v. State*, 175 S.W.3d 738, 751 (Tex. Crim. App. 2005) (finding egregious harm where "the jury was affirmatively told, on three occasions, twice by the

---

[1] Maciel specifically argues in her brief that the trial court's ruling constrained her ability to argue necessity in her closing argument.

prosecutor and once by the trial judge, that it need not return a unanimous verdict"). On the other hand, a court may conclude that this factor weighs against a finding of harm because the State did not emphasize the court's improperly included instruction. *See, e.g., Helm v. State*, 295 S.W.3d 780, 784 (Tex. App.—Fort Worth 2009, no pet.) ("Although the State referred to Appellant's refusal three times during its closing, the record demonstrates that the prosecution did not emphasize the court's instruction, focus the jury's attention on that instruction, or exploit the instruction by placing the weight of the trial court behind it."). This case simply does not lend itself to that kind of analysis, and consequently, I would conclude that this factor is neutral. But even if the majority is correct and this factor points to harmless error, it is merely one of four factors we consider when assessing harm. *See French v. State*, 563 S.W.3d 228, 237 (Tex. Crim. App. 2018) ("Whether jury charge error is preserved or not, the degree of harm resulting from the error must be measured in light of all four factors identified in *Almanza*.").

## VI.    THE JURY CHARGE

In any event, the Court of Criminal Appeals also concluded that Maciel effectively confessed to operating the vehicle while intoxicated. *Id.* ("In accord with our jurisprudence, [Maciel]'s testimony was sufficient to admit commission of DWI."). Thus, when we look at the jury charge as a whole, the trial court's failure to instruct the jury on Maciel's properly raised necessity defense could not be harmless "because its omission le[ft] the jury without a vehicle by which to acquit a defendant who has admitted to all the elements of the offense.'" *See Rogers I*, 550 S.W.3d at 192 (quoting *Cornet*, 417 S.W.3d at 449); *see also Jordan v. State*, 593 S.W.3d 340, 348 (Tex. Crim. App. 2020) ("The

9

difference between the instructions that were given and those that should have been given is the difference between foreclosing [necessity] and allowing fair consideration of it. That difference clearly demonstrates that Appellant was harmed . . . .").

In sum, because three factors demonstrate actual harm, and one factor is neutral, I would reverse the trial court's judgment and remand for further proceedings. *See French*, 563 S.W.3d at 237.

## VII.   DISTINGUISHING *CORNET*

Finally, the majority ultimately concludes that this is "one of the rare cases in which the trial court's refusal to instruct on a [necessity] defense was harmless." Of course, *Cornet v. State*, decided only ten years ago, was the case that established the possibility that a failure to instruct on a properly raised confession and avoidance defense could be harmless in exceptional circumstances. *See* 417 S.W.3d at 446, 451. A comparison between the two cases demonstrates why this case is anything but rare.

In *Cornet*, the defendant was charged with sexual assault of a child by digitally penetrating the complainant's genitals and making oral contact with her anus during a single event. 417 S.W.3d at 449. The defendant denied the oral contact but sought to justify the digital penetration with the medical care defense. *Id.* The trial court denied the defendant's requested instruction, and the Court of Criminal Appeals found the error was harmless. *Id.* at 449, 455.

The *Cornet* Court began by observing that it could not find a single instance in which the omission of a defensive instruction under a confession and avoidance theory was found to be harmless, setting the stage for its "record-specific analysis" in that case.

10

*Id.* at 451. In ultimately finding the error harmless, the court focused on two circumstances that are not present in this case: (1) although both assaults were alleged to have occurred during the same event, the medical care defense only applied to the digital penetration count; and (2) despite the absence of the instruction, the State expressly asked the jury to consider and reject the defense during its closing argument, which allowed the court to infer that the jury had implicitly rejected the defense by finding the defendant guilty on both counts. *Id.* at 452, 454. The *Cornet* Court found it "inconceivable that the jury would have found appellant guilty of causing the anus of the complainant to contact his mouth, a claim entirely denied by appellant, had it believed his claim that he was providing medical care to the complainant during the same event." *Id.* at 452.

In considering other relevant information, the court also noted that the defendant "did not mention the medical care-defense and appeared to disavow the suggestion that this was appropriate medical care" during his opening statement. *Id.* at 454. The court described his subsequent request for the instruction as "an afterthought" that was not "the primary focus of his defensive theory at trial." *Id.* at 455.

Here, unlike *Cornet*, Maciel was charged with a single count of DWI, the State did not ask the jury to consider and reject her necessity defense during its closing, and Maciel unequivocally presented her necessity defense during her opening statement. *See id.* at 452–55. I recognize that *Cornet* did not contemplate every scenario in which a trial court's refusal to instruct on a confession and avoidance defense could be considered harmless, but the stark contrast between that case and this one illustrates why they do not belong

11

in the same "rare" category of harmless error.[2] *See Rogers I*, 550 S.W.3d at 192–96 (finding some harm and distinguishing *Cornet* as a "rare" case).

## VIII.    CONCLUSION

It is clear how the majority would resolve Maciel's necessity defense if those panel members were on the jury. But that is not the prerogative of this Court. I would hold that Maciel suffered actual harm, reverse the conviction, and remand for further proceedings. Therefore, I respectfully dissent.

GINA M. BENAVIDES
Justice

Publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed on the
15th day of June, 2023.

---

[2] The majority cites extensively to *Villarreal v. State*, which, unlike this case, was considered under the more stringent egregious harm standard and did not involve the complete omission of a confession and avoidance instruction. *See* 453 S.W.3d 429, 430 (Tex. Crim. App. 2015).