

# IN THE
# TENTH COURT OF APPEALS

## No. 10-19-00073-CR

**VASHAUN XAVIER SCOTT,**

**Appellant**

**v.**

**THE STATE OF TEXAS,**

**Appellee**

**From the 12th District Court
Walker County, Texas
Trial Court No. 26387**

## MEMORANDUM OPINION

In six issues, appellant, Vashaun Xavier Scott, challenges his conviction for

aggravated robbery. *See* TEX. PENAL CODE ANN. § 29.03 (West 2019). Because we overrule

all of Scott's issues, we affirm.

### I.     IN-COURT IDENTIFICATION OF SCOTT

In his first issue, Scott complains that the trial court erred by allowing the victim,

Donnie Thomas, to make an in-court identification of Scott because Thomas was unable

to identify Scott for years and was allegedly only able to make the identification after seeing Scott in the courtroom.

## A.     Applicable Law

"An in-court identification is inadmissible when it has been tainted by an impermissibly suggestive pretrial [] identification." *Loserth v. State*, 963 S.W.2d 770, 771-72 (Tex. Crim. App. 1998); *see Hamilton v. State*, 300 S.W.3d 14, 18 (Tex. App.—San Antonio 2009, pet. ref'd). We apply a two-step analysis when a defendant challenges an in-court identification. *Loserth*, 963 S.W.2d at 772. Considering the totality of the circumstances, we determine whether the pretrial identification procedure was impermissibly suggestive. *Id.* If so, we then determine whether the procedure was so impermissibly suggestive as to give rise to a "very substantial likelihood of irreparable misidentification." *Id.* It is the defendant's burden to establish these elements by clear and convincing evidence. *Hamilton*, 300 S.W.3d at 18; *see Santos v. State*, 116 S.W.3d 447, 451 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd). If the defendant sustains his burden, the in-court identification is inadmissible unless the State can demonstrate by clear and convincing evidence that the identification was of "independent origin"; that is, the record clearly reveals the in-court identification of the suspect was based upon the witness's observations of the suspect prior to the impermissible pretrial identifications. *Jackson v. State*, 657 S.W.2d 123, 130 (Tex. Crim. App. 1983).

Reliability is the critical question in determining the admissibility of the in-court identification. *Loserth*, 963 S.W.2d at 772. Testimony is reliable if the totality of the circumstances reveals no substantial likelihood of misidentification despite a suggestive pretrial procedure. *See Aviles-Barroso v. State*, 477 S.W.3d 363, 381 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd) (citing *Ibarra v. State*, 11 S.W.3d 189, 195 (Tex. Crim. App. 1999); *Adams v. State*, 397 S.W.3d 760, 764 (Tex. App.—Houston [14th Dist.] 2013, no pet.)). In assessing reliability, the following five factors should be weighed against the corrupting effect of the suggestive pretrial procedure:

> (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and the confrontation.

*Loserth*, 963 S.W.2d at 772 (citing *Neil v. Biggers*, 409 U.S. 188, 199, 93 S. Ct. 375, 34 L. Ed. 401 (1972)). The *Biggers* factors are issues of historical fact and should be considered deferentially in the light most favorable to the trial court's ruling. *Id.* at 773. However, we apply a de novo review when weighing the factors against the corrupting effect of the suggestive pretrial procedure, and we need not assign the same weight or significance to the historical facts as the trial court in deciding the question of reliability. *Id.* at 773-74.

**B.    Discussion**

At trial, Scott Mitchell, a former detective with the Huntsville Police Department, testified that Thomas initially stated that he "saw the face of the first person in his mobile

home" and that "he never got to see the face of the second suspect and couldn't—couldn't recognize him." However, after getting out of the hospital and engaging in a second interview with Detective Mitchell, Thomas identified the second suspect "as a black male and he said if he was in his 40s, he would be surprised." Detective Mitchell noted that "when it came time to conduct actual photo line-ups, he [Thomas] said he didn't think he would be able to recognize the second male. So we only conducted a line-up of the first male that came into the house that he thought he could recognize." No photo lineup was conducted to confirm that Thomas could not identify Scott as the second suspect. Nevertheless, consistent with Thomas's description of the second suspect, the record shows that Scott was a "black male" and thirty-six years old at the time of the aggravated robbery.

During trial, outside the presence of the jury, Thomas testified that he first saw the two suspects in the hallway of his mobile home. One of the suspects had a gun. Despite the presence of the gun, Thomas charged at the suspects and was shot. Thomas and the suspects wrestled until Thomas relented and begged for his life. The suspects tied Thomas's hands behind his back, put a scarf over Thomas's eyes, and ordered Thomas to lie on the floor.

Though his encounter with the suspects was brief, Thomas described the second suspect, at a hearing outside the presence of the jury, as "short, kind of built like me, you know, kind of wide built." He added that the second suspect has skin that is "a little bit

lighter than mine or around my complexion and I noticed he was square kind of around his face and his nose was kind of big and . . . ." And although he indicated that he could not identify the second suspect in a photographic lineup, Thomas stated that when he saw Scott the very first time Thomas came to court, Thomas told Beth Malek, the victim assistance coordinator in the Walker County District Attorney's Office, that he recognized Scott as the second suspect in his mobile home during the aggravated robbery. Thomas emphasized that "ever since I've see him [Scott] in this courtroom, the first time he came in here live and in person, without nobody helping me or nothing like that, I identified him as one of the guys that were in my house." Thomas did not express any doubt in his mind that Scott was the second suspect.

Despite the foregoing, during trial and after the trial court overruled Scott's objection, Thomas admitted that, at some unspecified time, he saw a story about the incident on the evening news and that they showed photographs of the suspects. Defense counsel suggested that there was "a distinct possibility" that Thomas saw Scott's picture on the television, in the newspaper, or on the internet. Thomas responded, "Well, I—I have seen it on the TV and—since all this has happened." Defense counsel did not establish, by clear and convincing evidence, when Thomas allegedly saw Scott's photo on television. In other words, Scott failed to demonstrate, and it is unclear from the record, that Thomas saw a picture of Scott prior to seeing him in the courtroom.

Reviewing the *Biggers* factors in the light most favorable to the trial court's ruling and weighing the factors against the corrupting effect of the identification procedure itself, we conclude that Thomas's identification of Scott was sufficiently reliable and the identification procedure was not impermissibly suggestive. *See Biggers*, 409 U.S. at 199; *Loserth*, 963 S.W.2d at 772; *see also Hamilton*, 300 S.W.3d at 18; *Santos*, 116 S.W.3d at 451. As such, we conclude that the trial court did not err by overruling Scott's objection to Thomas's in-court identification.[1] We overrule Scott's first issue.

## II. SCOTT'S ORAL MOTION FOR CONTINUANCE

In his second issue, Scott contends that the trial court erred by denying his oral motion for continuance when the State waited until the jury was already selected to let Scott know that Thomas was going to identify Scott in open court. Scott alleges that the denial of his oral motion for continuance prevented him from adequately determining the exact nature of the evidence and the circumstances and the opportunity to prepare his case accordingly.

Article 29.03 of the Code of Criminal Procedure provides that: "a criminal action may be continued on the written [and sworn] motion of the State or of the defendant, upon sufficient cause shown . . . ." TEX. CODE CRIM. PROC. ANN. arts. 29.03, 29.08 (West

---

[1] Because we have concluded that Scott failed to establish by clear and convincing evidence that the pretrial procedure was impermissibly suggestive, we need not address the second step—that the purported impermissibly suggestive pretrial procedure tainted the in-court identification. *See Barley v. State*, 906 S.W.2d 27, 34 (Tex. Crim. App. 1995) (en banc); *Jackson v. State*, 657 S.W.2d 123, 127 (Tex. Crim. App. 1983) (en banc); *see also* TEX. R. APP. P. 47.1, 47.4.

2006).  The Court of Criminal Appeals has interpreted this to mean that "'if a party makes an unsworn oral motion for a continuance and the trial judge denies it, the party forfeits the right to complain about the judge's ruling on appeal.'"  *Blackshear v. State*, 385 S.W.3d 589, 591 (Tex. Crim. App. 2012) (quoting *Anderson v. State*, 301 S.W.3d 276, 279 (Tex. Crim. App. 2009)).  Consequently, an unsworn, oral motion for continuance preserves nothing for appeal.  *See Blackshear*, 385 S.W.3d at 591.

Because Scott's motion for continuance was neither written nor sworn, his second issue is not preserved.[2] *Id.*  We overrule Scott's second issue.

### III.     SCOTT'S MOTION FOR DIRECTED VERDICT & SUFFICIENCY OF THE EVIDENCE

In his third and fourth issues, Scott contends that the trial court erred by denying his motion for a directed verdict and that there is not sufficient evidence to support his conviction.  We disagree.

### A.     Standard of Review

A challenge to the trial court's denial of a motion for an instructed verdict or a motion for a directed verdict is treated as a challenge to the sufficiency of the evidence.

---

[2] In arguing that the trial court erred by denying his oral motion for continuance, Scott ignores the requirement that the motion for continuance be in writing and, instead, relies on *O'Rarden v. State* from the Dallas Court of Appeals for the proposition that the requirement that motions for continuances be written and sworn is not absolute and that an exception exists for when the denial of the motion would amount to a deprivation of due process.  *See* 777 S.W.2d 455, 459-60 (Tex. App.—Dallas 1989, pet. ref'd).  However, in *Anderson v. State*, the Court of Criminal Appeals explicitly refused to recognize a due-process exception to the rule requiring motions for continuances to be written and sworn in order to be preserved on appeal.  *See Anderson v. State*, 301 S.W.3d 276, 280-81 (Tex. Crim. App. 2009) ("We hold that the court of appeals erred in concluding that there is a 'due process' exception to the preservation requirements governing continuance motions in Articles 29.03 and 29.08."); *see also Blackshear v. State*, 385 S.W.3d 589, 591 (Tex. Crim. App. 2012).  Accordingly, we are not persuaded by Scott's "due process" argument in this issue.

*Williams v. State*, 937 S.W.2d 479, 482 (Tex. Crim. App. 1996). The Court of Criminal

Appeals has expressed our standard of review of a sufficiency issue as follows:

> When addressing a challenge to the sufficiency of the evidence, we consider whether, after viewing all of the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017). This standard requires the appellate court to defer "to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. We may not re-weigh the evidence or substitute our judgment for that of the factfinder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). The court conducting a sufficiency review must not engage in a "divide and conquer" strategy but must consider the cumulative force of all the evidence. *Villa*, 514 S.W.3d at 232. Although juries may not speculate about the meaning of facts or evidence, juries are permitted to draw any reasonable inferences from the facts so long as each inference is supported by the evidence presented at trial. *Cary v. State*, 507 S.W.3d 750, 757 (Tex. Crim. App. 2016) (citing *Jackson*, 443 U.S. at 319); *see also Hooper v. State*, 214 S.W.3d 9, 16-17 (Tex. Crim. App. 2007). We presume that the factfinder resolved any conflicting inferences from the evidence in favor of the verdict, and we defer to that resolution. *Merritt v. State*, 368 S.W.3d 516, 525 (Tex. Crim. App. 2012). This is because the jurors are the exclusive judges of the facts, the credibility of the witnesses, and the weight to be given to the testimony. *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010). Direct evidence and circumstantial evidence are equally probative, and circumstantial evidence alone may be sufficient to uphold a conviction so long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Ramsey v. State*, 473 S.W.3d 805, 809 (Tex. Crim. App. 2015); *Hooper*, 214 S.W.3d at 13.
>
> We measure whether the evidence presented at trial was sufficient to support a conviction by comparing it to "the elements of the offense as defined by the hypothetically correct jury charge for the case." *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically correct jury charge is one that "accurately sets out the law, is authorized

by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.*; *see also Daugherty v. State*, 387 S.W.3d 654, 665 (Tex. Crim. App. 2013). The "law as authorized by the indictment" includes the statutory elements of the offense and those elements as modified by the indictment. *Daugherty*, 387 S.W.3d at 665.

*Zuniga v. State*, 551 S.W.3d 729, 732-33 (Tex. Crim. App. 2018).

## B. Applicable Law

A person is guilty of aggravated robbery if he "commits robbery" and "uses or exhibits a deadly weapon." TEX. PENAL CODE ANN. § 29.03(a)(2). A person commits robbery "if, in the course of committing theft . . . and with intent to obtain or maintain control of the property, he intentionally, knowingly, or recklessly causes bodily injury to another or intentionally threatens or places another in fear of imminent bodily injury or death." *Id.* § 29.02 (West 2019). A person commits theft if he "unlawfully appropriates property with intent to deprive the owner of the property." *Id.* § 31.03 (West 2019). On appeal, Scott challenges two elements of the charged offense—identity and bodily injury.

## C. Identity

The State is required to prove beyond a reasonable doubt that the accused is the person who committed the crime charged. *Roberson v. State*, 16 S.W.3d 156, 167 (Tex. App.—Austin 2000, pet. ref'd) (citing *Johnson v. State*, 673 S.W.2d 190, 196 (Tex. Crim. App. 1984); *Rice v. State*, 901 S.W.2d 16, 17 (Tex. App.—Fort Worth 1990, pet. ref'd)). Identity may be proven by direct or circumstantial evidence. *Id.* (citing *Earls v. State*, 707

S.W.2d 82, 85 (Tex. Crim. App. 1986); *Couchman v. State*, 3 S.W.3d 155, 162 (Tex. App.—Fort Worth 1999, pet. ref'd); *Creech v. State*, 718 S.W.2d 89, 90 (Tex. App.—El Paso 1986, no pet.)). "In fact, identity may be proven by inferences." *Id.* (citing *United States v. Quimby*, 636 F.2d 86, 90 (5th Cir. 1981)); *see Jones v. State*, 900 S.W.2d 392, 399 (Tex. App.—San Antonio 1995, pet. ref'd) (explaining that the jury may use common sense and apply common knowledge, observation, and experience gained in ordinary affairs of life when giving effect to inferences that may be reasonably drawn from the evidence).

In the instant case, eyewitness Ian Bracewell, a program coordinator for the Law Enforcement Management Institute of Texas at Sam Houston State University, testified about the physical appearance of the individuals who were at the scene where the robbery occurred, at or near the time of the robbery. Bracewell recounted that he saw a silver Pontiac driving very slowly with two African-American males walking next to it. Shortly thereafter, he saw the Pontiac backed up in front of Thomas's home with its trunk open. Bracewell described the two African-American males that were walking beside the Pontiac as wearing baggy pants, possibly blue jeans. In surveillance video from the pawn shop where Thomas's stolen property was later sold, Scott was seen pawning Thomas's property while wearing baggy jeans.

Additionally, co-conspirator Kristy Schmidt testified that Scott was one of the men who entered Thomas's home during the robbery. Schmidt was at the scene when the robbery occurred, and her involvement in the criminal episode included assisting in the

removal of Thomas's property from his home and going to the pawn shop where Thomas's stolen property was sold.

And finally, as referenced above, Thomas identified Scott as the second man who entered his home during the robbery. Thomas recognized Scott based on his physical appearance.

Viewing the evidence in the light most favorable to the jury's verdict, we cannot say that the evidence pertaining to the identity element of the charged offense is insufficient.[3] *See* TEX. PENAL CODE ANN. § 29.03(a)(2); *Johnson*, 673 S.W.2d at 196; *Roberson*, 16 S.W.3d at 167; *Jones*, 900 S.W.2d at 399; *see also Jackson*, 443 U.S. at 318-19, 99 S. Ct. 2788-89; *Zuniga*, 551 S.W.3d at 732-33.

## D. Bodily Injury

Next, we address Scott's challenge to the bodily-injury element. Thomas testified that he was struck on the head by something other than someone's hands. He recalled that a bullet grazed his face and that the bullet was fired from a gun wielded by one of the involved parties.

---

[3] Despite the foregoing, Scott argues that we should not consider Schmidt's testimony because she was an accomplice to the aggravated robbery. *See* TEX. CODE CRIM. PROC. ANN. art. 38.14 (West 2005) ("A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed[.]"). We are not persuaded by this argument because, as mentioned above, the record contains testimony from both Ian Bracewell and the victim, Thomas, identifying Scott as a participant in the aggravated robbery. Or, in other words, notwithstanding Schmidt's testimony, other evidence in the record tended to connect Scott with the offense committed. *See id.*; *see also Druery v. State*, 225 S.W.3d 491, 498 (Tex. Crim. App. 2007) (explaining that accomplice testimony requires corroboration by "independent evidence tending to connect the accused with the crime").

Despite the foregoing, Scott highlights testimony from trial indicating that Thomas's injuries were caused by a hammer. Detective Mitchell noted that injuries on Thomas's back appeared to have been caused by a hammer. However, Detective Mitchell's testimony did not refer to the injuries Thomas sustained on his head. And the State's photographic exhibits showed that the wound patterns on Thomas's back were distinctly different from those on his head.

In any event, viewing the evidence in the light most favorable to the jury's verdict, we conclude that the evidence, especially Thomas's testimony and the photographs of the wound patterns on his head, was sufficient to show that Thomas was threatened or placed in fear of bodily injury or death. *See Jackson*, 443 U.S. at 318-19, 99 S. Ct. at 2781; *Zuniga*, 551 S.W.3d at 732-33; *see also Howard v. State*, 306 S.W.3d 407, 410 (Tex. App.—Texarkana 2010), *aff'd*, 333 S.W.3d 137 (Tex. Crim. App. 2011) (noting that "it is not a specific element of the offense of aggravated robbery that the actor have a confrontation with another person. The relevant statutes require that the actor threaten or place another in fear of bodily injury or death. There need not be a physical altercation to satisfy this element."); *Pitte v. State*, 102 S.W.3d 786, 793 (Tex. App.—Texarkana 2003, no pet.) ("It is sufficient to constitute robbery if the accused places the complainant in fear of bodily injury or death to the degree that reason and common experience will likely induce the complainant to part with his property against his will." (internal quotations omitted)). And to the extent that the evidence supports conflicting inferences, we must presume

that the jury resolved the conflicts in favor of the prosecution and therefore defer to that determination. *See Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793.

Accordingly, we hold that the trial court did not err by denying Scott's motion for a directed verdict and that the evidence is sufficient to support Scott's conviction for aggravated robbery. *See* TEX. PENAL CODE ANN. § 29.03; *see also Jackson*, 443 U.S. at 318-19, 99 S. Ct. at 2781; *Zuniga*, 551 S.W.3d at 732-33. As such, we overrule Scott's third and fourth issues.

## IV. JURY INSTRUCTIONS REGARDING ACCOMPLICE-WITNESS TESTIMONY

In his fifth issue, Scott asserts that the trial court's instruction regarding accomplice-witness testimony was improper and confusing and that the trial court erred by denying his request to include additional sentences to clarify the jury's use of testimony from the accomplice-witness. We disagree.

### A. Standard of Review

A claim of jury-charge error is reviewed using the procedure set out in *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985). *See Barrios v. State*, 283 S.W.3d 348, 350 (Tex. Crim. App. 2009). If error is found, we then analyze that error for harm. *Middleton v. State*, 125 S.W.3d 450, 453 (Tex. Crim. App. 2003). If an error was properly preserved by objection, reversal will be necessary if there is some harm to the accused from the error. *Almanza*, 686 S.W.2d at 171.

### B. Applicable Law

In Texas, a conviction cannot be secured upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant to the offense. TEX. CODE CRIM. PROC. ANN. art. 38.14 (West 2005). Presence at the crime scene does not make a person an accomplice. *See Kunkle v. State*, 771 S.W.2d 435, 439 (Tex. Crim. App. 1986). To be considered an accomplice, the individual must have engaged in an affirmative act that promotes the commission of the offense that the accused committed. *Smith v. State*, 332 S.W.3d 425, 439 (Tex. Crim. App. 2011). A person is not an accomplice if the person knew about the offense and failed to disclose it or helped the accused conceal it. *Id.*; *see Gamez v. State*, 737 S.W.2d 315, 322 (Tex. Crim. App. 1987).

A witness may be an accomplice as a matter of law or as a matter of fact. *Cocke v. State*, 201 S.W.3d 744, 747 (Tex. Crim. App. 2006). The evidence in the case will dictate whether an accomplice-as-a-matter-of-law or accomplice-as-a-matter-of-fact instruction is required. *Id.* A person who participates with the defendant before, during, or after commission of the crime for which the defendant is on trial is an accomplice as a matter of fact. *Ex parte Zepeda*, 819 S.W.2d 874, 875-76 (Tex. Crim. App. 1991). Therefore, a person who is a party to the crime or could be charged for that crime is an accomplice as a matter of fact. *Id.* at 876. Conversely, the Court of Criminal Appeals has held that a person who is indicted for the same offense or a lesser-included offense as the accused or has had that indictment dismissed in exchange for testifying against the accused is an accomplice as a matter of law. *Smith*, 332 S.W.3d at 439.

When the evidence clearly shows or there is no doubt that a witness is an accomplice as a matter of law, the trial court must instruct the jury accordingly. *Id.; see Blake v. State*, 971 S.W.2d 451, 455 (Tex. Crim. App. 1998). The failure to provide such an instruction is error. *Herron v. State*, 86 S.W.3d 621, 631 (Tex. Crim. App. 2002). When there is doubt or the evidence is conflicting as to whether a witness is an accomplice, then the trial court must leave to the jury the question of whether the witness is an accomplice witness as a matter of fact under instruction defining the term, "accomplice." *Paredes v. State*, 129 S.W.3d 530, 536 (Tex. Crim. App. 2004). When the evidence clearly shows that a witness is not an accomplice, the trial judge is not obligated to instruct the jury on the accomplice-witness rule, as a matter of law or fact. *Smith*, 332 S.W.3d at 440.

## C. Discussion

In the instant case, the jury charge provided the following with respect to accomplice-witness testimony:

> A person cannot be convicted of a crime on the uncorroborated testimony of an accomplice. An accomplice is someone whose participation in the crime would permit his conviction for the crime charged in the indictment.
>
> Kristy Schmidt is an accomplice to the crime of aggravated robbery, if it was committed. The defendant, Vashuan Xavier Scott, therefore cannot be convicted on the testimony of Kristy Schmidt unless the testimony is corroborated.
>
> Evidence is sufficient to corroborate the testimony of an accomplice if that evidence tends to connect the defendant, Vashuan Xavier Scott, with the commission of any offense that may have been committed. Evidence is not sufficient to corroborate the testimony of an accomplice if that evidence merely shows an offense was committed.

Proof that the defendant was merely present in the company of the accomplice shortly before or after the time of any offense that was committed is not, in itself, sufficient corroboration of the accomplice's testimony. That evidence, however, can be considered along with other suspicious circumstances.

You can convict the defendant on the testimony of Kristy Schmidt only if—

1. you believe that the testimony of Kristy Schmidt is true and shows the defendant is guilty; and

2. there is other evidence, outside the testimony of Kristy Schmidt, that tends to connect the defendant, Vashuan Xavier Scott, with the commission of the offense charged; and

3. on the basis of all the evidence in the case, you believe, beyond a reasonable doubt, that the defendant is guilty.

At the charge conference, Scott requested that the following two sentences be added to the instruction regarding accomplice-witness testimony:

- "To corroborate the testimony of an accomplice, there must be evidence of some act or fact related to the crime, of which if believed by itself and without any aid, interpretation or direction from the testimony of the accomplice, tends to connect the defendant with the offense committed, if any."

- "If there is no other evidence which tends to connect the defendant with the crime, the testimony is not corroborated. If there is other evidence which tends to connect the defendant with the commission of the crime which you believe beyond a reasonable doubt, then the testimony of the accomplice is corroborated."

Even if we were to assume that the jury charge was erroneous, as Scott alleges, we cannot say that he was harmed. Because Scott properly preserved error in the jury charge, reversal is required if we find "some harm" to his rights. *See Almanza*, 686 S.W.2d at 171.

In conducting this review, neither Scott nor the State bears the burden on appeal to show harm or lack thereof. *Rogers v. State*, 550 S.W.3d 190, 191 (Tex. Crim. App. 2018). Instead, this Court must examine the relevant portions of the entire record, including the entire jury charge, the state of the evidence, arguments of counsel, and other relevant record information, to determine whether Scott suffered actual, as opposed to theoretical, harm as a result of the error. *Id.* at 192. This evaluation is case-specific. *Id.*

As noted above, the record contained other evidence, outside the testimony of Schmidt (an accomplice as a matter of law), that tended to connect Scott with the commission of the aggravated robbery, especially Bracewell's testimony placing Scott at the scene of the crime and the surveillance video showing Scott pawning the items stolen from Thomas. Because there was evidence tending to connect Scott to the crime, the jury was authorized to use Schmidt's testimony in determining Scott's guilt. *See Smith*, 332 S.W.3d at 442 (stating that when reviewing the sufficiency of the non-accomplice evidence under article 38.14, we decide whether inculpatory evidence tends to connect the accused to the commission of the crime; the direct or circumstantial evidence is sufficient if it shows that rational jurors could have found it sufficiently tended to connect the accused to the crime; we defer to the factfinder's resolution of the evidence; and it is not appropriate for appellate court to independently construe the non-accomplice evidence); *see also Herron*, 86 S.W.3d at 632-33 (noting that we examine the strength of non-accomplice witness testimony by its reliability or believability and by the strength of

its tendency to connect the defendant to the crime and that this inquiry is satisfied when there is non-accomplice witness evidence, and there is no rational and articulable basis for disregarding the evidence or finding that it fails to connect the defendant to the offense). And finally, neither the arguments of counsel nor other relevant record information demonstrates Scott suffered actual, as opposed to theoretical, harm as a result of the alleged error in the charge. *See Rogers*, 550 S.W.3d at 192.

Based on the foregoing, we cannot say that the *Rogers* factors weigh in favor of a finding that Scott suffered some harm by the trial court's refusal to include Scott's proposed instructions. *See id.*; *see also Almanza*, 686 S.W.2d at 171. Accordingly, we overrule Scott's fifth issue.

## V. EVIDENCE ADMITTED DURING THE PUNISHMENT PHASE OF TRIAL

In his sixth issue, Scott argues that the trial court erred by admitting State's Exhibit 2, which is the pen packet for his prior conviction for possession of a controlled substance, during the punishment phase at trial. Specifically, Scott asserts that the State's Exhibit 2 "lacks a properly certified judgment and sentence, so the trial court had to determine whether any of the items in the pen packet could reasonably be considered a functional equivalent of such a judgment and sentence."

To preserve error for appellate review, a complaining party must make a timely and specific objection. *See* TEX. R. APP. P. 33.1(a)(1); *Wilson v. State*, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002). Texas courts have held that points of error on appeal must

correspond or comport with objections or arguments made at trial. *Dixon v. State*, 2 S.W.3d 263, 273 (Tex. Crim. App. 1998); *see Wright v. State*, 154 S.W.3d 235, 241 (Tex. App.—Texarkana 2005, pet. ref'd). "Where a trial objection does not comport with the issue raised on appeal, the appellant has preserved nothing for review." *Wright*, 154 S.W.3d at 241; *see Resendiz v. State*, 112 S.W.3d 541, 547 (Tex. Crim. App. 2003) (holding that an issue was not preserved for appellate review because appellant's trial objection did not comport with the issue he raised on appeal).

During the punishment phase of trial, defense counsel made the following objection to State's Exhibit 2:

> Judge, no objection to State's 3. I'll object to State's 2 based on the fact that the prints are not of sufficient quality to sufficiently identify my client as the same person in the pen packet. And as far as the photograph in that pen packet, there's been no testimony verifying that the prints, the photo, the judgment all go to the same person, so I'll object to State's 2.

This objection does not comport with the argument made by Scott on appeal. Thus, we cannot say that Scott has preserved this issue for appellate review. *See* TEX. R. APP. P. 33.1(a)(1); *see also Resendiz*, 112 S.W.3d at 547; *Dixon*, 2 S.W.3d at 273; *Wright*, 154 S.W.3d at 241.

However, even if Scott had preserved this issue for appellate review, it lacks merit. "To establish that a defendant has been convicted of a prior offense, the State must prove beyond a reasonable that (1) a prior conviction exists, and (2) the defendant is linked to

that conviction." *Flowers v. State*, 220 S.W.3d 919, 921 (Tex. Crim. App. 2007). "No specific document or mode of proof is required to prove these two elements." *Id.*

In the instant case, the record includes a declaration from Texas Department of Criminal Justice Records Coordinator Sarah H. Wright that the pen packet in State's Exhibit 2 contained a true and correct copy of information on Vashaun Scott, TDCJ number 693000, in cause number 9410378. The pen packet also contained a 1994 judgment revoking Scott's community supervision and sentencing him to six years' confinement in the Institutional Division of the Texas Department of Criminal Justice. Additionally, the pen packet includes pictures, which Deputy Constable K.C. Chitwood identified as Scott. And although the fingerprints in the pen packet were distorted, the fingerprint card indicates that they belong to Vashaun Scott, whose "true" name is Vashaun Xavier Scott. The fingerprint card also includes a unique SID number, which is 05272778. Without objection, Deputy Constable Chitwood identified Scott's fingerprints in State's Exhibits 1 and 3 and noted that the unique SID number used in State's Exhibit 3 was identical to the SID number in State's Exhibit 2. He also stated that the fingerprint card in State's Exhibit 3 contained Scott's date of birth, which matched the date of birth found on the fingerprint card in State's Exhibit 2.

Given the above, the State sufficiently linked Scott to the pen packet in State's Exhibit 2. *See id.* Therefore, even if Scott had preserved this issue, it cannot be said that the trial court abused its discretion by admitting State's Exhibit 2 into evidence. *See*

*McDonald v. State*, 179 S.W.3d 571, 576 (Tex. Crim. App. 2005) (noting that we review a trial court's decision to admit or exclude evidence for an abuse of discretion); *see also* TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(a) (West Supp. 2019) (authorizing the trial court to admit punishment evidence "as to any matter the court deems relevant to sentencing"); *Muhammad v. State*, 46 S.W.3d 493, 498 (Tex. App.—El Paso 2001, no pet.) (stating that the trial court "enjoys wide latitude in admitting relevant evidence" during the punishment phase of trial "so long as its admission is otherwise permitted by the rules of evidence"). We overrule Scott's sixth issue.

## VI. CONCLUSION

Having overruled all of Scott's issues on appeal, we affirm the judgment of the trial court.

JOHN E. NEILL
Justice

Before Chief Justice Gray,
     Justice Davis, and
     Justice Neill
Affirmed
Opinion delivered and filed September 9, 2020
Do not publish
[CRPM]

